[L. A. No. 4953. Department Two.—May 7, 1919.]

## MARY W. KELLNER, Appellant, v. THE TRAVELERS INSURANCE COMPANY OF HARTFORD, CONNECTICUT (a Corporation), Respondent.

[1] ACCIDENT INSURANCE — RECOVERY FOR DEATH — NONRESPONSIBILITY FOR INJURIES RESULTING FROM DISEASE — PROVISION OF POLICY — INSTRUCTION.—In an action to recover for the death of the husband of the plaintiff under a policy of accident insurance providing that the insurance shall not cover injuries, fatal or nonfatal, resulting wholly or partly from disease in any form, an instruction offered by the plaintiff was properly refused, which if given, would have informed the jurors that if they believed the fall sustained by the insured was the "sole and only direct cause" of death they must find for the plaintiff, notwithstanding a further belief that in previous years deceased may have had a reducible hernia, provided that they should further find that deceased would not have died, at the time, under the circumstances, and in the manner he did die, had it not been for said accident and fall.

[2] ID.—DEATH FROM DISEASE AND ACCIDENT—INSTRUCTION.—In such action, the court correctly instructed the jury that there could be no recovery under the policy for death caused partly by disease and partly by accidental injury.

[3] ID.—EVIDENCE—ACCIDENTAL INJURY — PRE-EXISTING DISEASES — CAUSE OF DEATH—RIGHT TO RECOVER—INSTRUCTION.—In such action, an instruction that if the plaintiff has established by a preponderance of the evidence not only the fact of the accidental injury but the sufficiency thereof to cause death, independently of other causes, and the testimony in reference to pre-existing disease failed to establish such disease as indirect or contributory cause of death, then the plaintiff can recover, correctly states the law on the subject discussed, and opposition to it based upon the theory that any accident which shortens an insured man's life may be the basis of recovery is not a tenable theory.

[4] ID.—DISEASED PHYSICAL CONDITION — EFFECT OF ALLEGATION IN ANSWER — BURDEN OF PROOF — INSTRUCTION.—In such action, an instruction offered by plaintiff the purport of which was that upon defendant rested the burden of proving that the diseased physical condition of the insured contributed to or caused his death, was properly refused, notwithstanding the allegation in the answer that the insured was at the time of the accident in a diseased condition and that disease proximately contributed to death.

[5] ID.—ABSENCE OF DISEASE CONTRIBUTING TO DEATH — BURDEN OF PROOF—DUTY OF PLAINTIFF.—The absence of disease contributing

to death was as much a part of plaintiff's case under the contract, as the affirmative showing of the occurrence of an accident producing injury and of death following such injury.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Chas. Monroe, Judge.   Affirmed.

The facts are stated in the opinion of the court.

W. W. Hindman for Appellant.

O'Melveny, Stevens & Millikin and Walter K. Tuller for Respondent.

MELVIN, J.—Plaintiff sued to recover for the death of her husband under a policy of accident insurance issued by defendant.   Trial by jury resulted in a judgment for defendant and plaintiff appeals therefrom.

The policy contained a provision that defendant would pay ten thousand dollars for death of the assured "resulting from bodily injuries, effected directly and independently of all other causes, through external, violent and accidental means." There was a further stipulation that if any loss should be caused by hernia the company would pay one-half of the amount.   There was another provision in the policy as follows: "This insurance shall not cover injuries, fatal or non-fatal, resulting wholly or partly from . . . disease in any form."

The complaint contained an averment that on a specified day Mr. Kellner's feet accidentally slipped from under him, causing him to fall violently to the floor of a room in his home, and that the accident and fall, "independent of all other causes" produced the death of Ernest F. Kellner.

Regarding the fall Mrs. Kellner testified, in part, as follows: "I was writing letters that Mr. Kellner dictated to me, and he said he wanted to do a little writing for himself—and he took the ink bottle and writing materials and went into another room, where the light was better for him, to do some writing for himself, and as he went in there he fell, stumbled on the rug and fell.   I was in the room that he left but when I heard the fall I started, when I got into the other room he was just getting up.   I found the things on the floor, and the ink on the floor, and of course I first wanted to see his clothes,

and wipe the ink from his clothes, but there was none on his clothes, but it was all over the floor and on the rug.''

The rug was offered in evidence and refused a place on the files of the court, but counsel was permitted to exhibit it to the jury and to ask Mrs. Kellner questions about it. As respondent offered no testimony regarding the fall we cannot say that the ruling of the court denying formal admission of the rug was prejudicially erroneous. The whole theory of the defense was that the fall was a fact, but that other causes existing at that time contributed to Mr. Kellner's death.

Dr. Thomas, while on the stand, testified: ''They said he stumbled over a rug.'' By the word ''they'' he doubtless meant members of the family of the patient. During the argument, counsel for plaintiff sought to tell the jury that members of Mr. Kellner's family had said to Dr. Thomas in the presence of Mr. Kellner that the latter had stumbled over a rug and had fallen. The court, upon objection being made, checked counsel, said there was no such testimony and instructed the jury to pay no attention to counsel's understanding upon the subject. This is denounced as erroneous, but we find nothing in the evidence to justify the conclusion that the statement made to the doctor was in his patient's presence. The record, therefore, justifies the court's action.

Medical witnesses testified regarding the cause of death. The history of the case as related by Mr. Kellner's physician was, in brief, that of a man who had suffered an operation for appendicitis, followed by the development of a hernia for the relief of which another operation was performed, after which a third operation became necessary for the removal of threads which had been used in closing the former wound. Dr. Thomas testified that his patient did not have hernia after the last-mentioned operation. Shortly before his death, however, Mr. Kellner went to the doctor's office and the latter found ''a slight bulge of the wound,'' but not what he would call a hernia. It was the belief of the physician, however, that there was weakness of the abdominal wall at the site of the incisions, but not a distinct hernia. The day following Mr. Kellner's fall Dr. Thomas was called to see him. The medical man found the patient in bed, very ill, vomiting and suffering great pain. On examination of the patient's abdomen there was found considerable discoloration and protrusion and an operation was ordered. A cut was made at the

site of the former incision and it was found that five or six
feet of intestines protruded through an opening in the ab-
dominal wall.   There was discoloration, the protruding part
was surrounded by dark fluid, and there were evidences of the
beginning of peritonitis.   Mr. Kellner died that night.   Con-
cerning the cause of death the doctor said: ''My opinion is
that the fall caused a large quantity of gut to be forced out
through the weak spot in the abdominal wall, and become
strangulated and that he died as a result of that strangula-
tion.''

Other medical experts gave it as their opinion that under
the statement of Dr. Thomas there must have been a hernia
sac existing before the time of the accident, and that the fall
alone could not have produced the result observed at the time
of the last operation without the previous existence of a patho-
logical condition.   We cannot say that upon such conflicting
evidence the verdict and judgment were not properly based
upon that part of the evidence favorable to the defendant.

[1]   Appellant attacks certain rulings with reference to
giving and refusing instructions.   One, offered by the plain-
tiff, if given, would have informed the jurors that if they be-
lieved the fall was the ''sole and only direct cause'' of Mr.
Kellner's death they must find for the plaintiff, notwithstand-
ing a further belief that in previous years deceased may have
had a reducible hernia, provided they should further find that
''said Ernest F. Kellner would not have died, at the time,
under the circumstances, and in the manner he did die,
had it not been for said accident and fall.''   The proposed in-
struction did not properly declare the law.   Under the terms
of the policy the defendant was not responsible for the result
of injuries resulting wholly or partly from disease in any
form.   The last part of the offered instruction would ignore
this part of the contract and make the criterion of recovery
the shortening by the accident of the life of a person assured
without any reference to the possible concurrence of disease
in producing death.

[2]   The court correctly instructed the jury that there could
be no recovery under the policy for death caused partly by
disease and partly by accidental injury.   The court also gave
to the jury the following instruction:

''If, however, the plaintiff in this case has established by a
preponderance of the evidence not only the fact of the ac-

cidental injury but the sufficiency thereof to cause death, independently of other causes, and the testimony in reference to pre-existing disease failed to establish such disease as indirect or contributory cause of death, then the plaintiff can recover.''

[3]   This instruction correctly states the law on the subject discussed.   Opposition to it is based upon the theory that any accident which shortens an insured man's life may be the basis of recovery.   This is not a tenable theory.   (*Maryland Casualty Co.* v. *Morrow,* 213 Fed. 599, [52 L. R. A. (N. S.) 1213, 130 C. C. A. 179].)   In the opinion in *Clarke* v. *New Amsterdam Casualty Co., ante,* p. 76, [179 Pac. 195], the Morrow case is cited as typical of many authorities to the same effect and is approved.

[4]   Plaintiff offered, and the court refused to give, an instruction the purport of which was that upon defendant rested the burden of proving that Mr. Kellner's diseased physical condition contributed to or caused his death.   It is contended that since defendant alleged in its answer that deceased was at the time of the accident in a diseased condition and that disease proximately contributed to death, such allegation must be proven by defendant by a preponderance of evidence.   Whatever may be the rule in other jurisdictions, the law is well settled in California adversely to plaintiff's contention.   (*Rock* v. *Travelers Ins. Co.,* 172 Cal. 462, [L. R. A. 1916F, 1196, 156 Pac. 1029] ; *Price* v. *Occidental Life Ins. Co.,* 169 Cal. 800, [147 Pac. 1175].)   [5]   The absence of disease contributing to death was as much a part of the plaintiff's case under the contract, as the affirmative showing of the occurrence of an accident producing injury and of death following such injury.   (*Travelers Ins. Co.* v. *Selden,* 78 Fed. 285, [24 C. C. A. 92].) .

The judgment is affirmed.

Lennon J., and Wilbur, J., concurred.