[L. A. No. 22668. In Bank. Mar. 12, 1954.]

EDWARD K. ZUCKERMAN et al., Appellants, v. UNDER-WRITERS AT LLOYD'S, LONDON (an Association), Respondent.

Francis J. Gabel and Henry F. Walker for Appellants.

Adams, Duque, Davis & Hazeltine and Waller Taylor II, for Respondent.

EDMONDS, J.—Upon trial of the action brought by the beneficiaries under two accident insurance policies upon the life of George H. Francis, a jury returned verdicts in favor of the insurer. As grounds for reversal of the judgment denying recovery, it is contended that certain instructions to the jury were prejudicially erroneous.

One of the policies sued upon insured the life of Francis in the amount of $100,000 for the benefit of the law firm of

which he was a member. A second policy for $75,000 provided that the insurance should be payable to the law firm and to James H. Francis, his brother.

The answer of the insurer admitted that the policies were in effect at the time of the death of Francis but denied liability thereunder. As separate and affirmative defenses, it alleged that death was caused by (1) disease or natural causes, and (2) intentional self-injury.

The evidence shows that Francis, a resident of Los Angeles, went to Mexico on a fishing trip. As the result of a storm, the boat used by him and several others in the party was unable to return to the mainland and the men spent a cold and uncomfortable night on an island. The next day Francis complained about not feeling well. He kept himself wrapped in blankets and there is considerable evidence that he appeared to have frequent chills. However, Stilbert, one of the men who accompanied Francis, testified that at no time did Francis appear to him to be ill.

The record includes the testimony that Francis did not go to his office on the three days following his return to Los Angeles. However, Fred Paulsen testified that he and Francis were together at the latter's office on one of those days for one or two hours. He said that Francis "appeared to be in good health, so far as I know." Other testimony is that during those three days Francis was suffering from a cold, evidenced by the symptoms of sneezing and coughing. On the third day, Francis consulted a physician and asked him to prescribe for a cold. Pursuant to the physician's advice, Francis obtained aureomycin and sleeping tablets.

Francis then decided that his condition would improve if he visited his brother who lived on the desert. On the following afternoon, Francis drove to Victorville and parked his car in a picnic ground near by. Two days later, he was discovered in the car, dead. The car was facing south and all of the windows were closed. Francis was lying in the back seat in a supine position with his head to the east on a small pillow. His left arm was down off the seat and the right arm was lying across his body. His collar was buttoned and his tie intact, as were all of his clothes. As to his general appearance, the deputy sheriff who investigated testified that "he was lying there in a peaceful manner." The keys to the car were in Francis' coat pocket.

An autopsy, not requested by any of the parties, was performed by county autopsy surgeon Baird on the following

Monday. Two days later the body was cremated. The record does not show at whose order this was done. Some seven to 12 days after the death of Francis, Norman Pittluck, an attorney employed by the law firm, discovered the insurance policies and informed Arthur E. Edmunds, one of the partners, of their terms.

Eleven days after the body of Francis was discovered, Underwriters was notified of the death and claim filed for payment. Underwriters, pursuant to the provisions of the policies, requested permission to perform a post-mortem examination. The insurer was informed on April 25th that the body had been cremated.

The testimony as to the cause of death is conflicting and extremely technical. The certificate of death, signed by Dr. Baird, states:

*"Disease or condition directly leading to death:*

(A) Bronchopneumonia.

*"Antecedent Causes.* Morbid conditions, if any giving rise to the above cause (A) stating the underlying cause last:

"Due to (B) Edema of Brain. Due to (C) Acute Alcoholism."

Dr. Baird testified that he put "acute alcoholism" on the death certificate because an acquaintance of the deceased informed him that Francis was an alcoholic drinker. According to Dr. Baird, his diagnosis of edema of the brain was based solely on the statement made to him that Francis used intoxicants. Edema of the brain, said Dr. Baird, results either from alcohol or injury "and in this case there was no evidence of injury." His examination was made by "gross" methods, that is, what he could see with his eyes and feel with his hands, in contradistinction to microscopic study.

An electrocardiographic tracing made for Francis about two years before his death showed that he then had a normal heart for a man of his age. Underwriters' medical expert was of the opinion that Francis had suffered a "first degree heart block."

Flossie Francis, the divorced wife of the insured, remained on friendly terms with him until his death. She testified that he was a heavy drinker and an habitual user of sleeping pills. According to her testimony, he did not look well during the last months before his death and complained of pain, especially in his shoulder. Other witnesses described Francis

as "a heavy but sociable drinker," and were of the opinion that he did not appear to be well. However, several friends of the deceased told the jury he was in the best of health and rarely drank, never to excess.

The medical expert for the beneficiaries, in response to a hypothetical question, testified that the cause of death was bronchial pneumonia, and that there "is nothing in the history of this case or in the autopsy findings which show that alcohol was a causative factor in any way whatsoever." A physician called by the insurer also was asked a hypothetical question. He said that an accurate diagnosis could not be made without microscopic studies. In his opinion, Francis did not die of bronchopneumonia. "I don't believe this man died of pneumonia, because if you have ever seen a patient die of pneumonia you have seen a patient who gasps for breath . . . it would be very—very unique for a man to be lying [supine] . . . in a car with his tie in place, with the upper button of his shirt unopened, lying calmly with the windows shoved up. I think most people with pneumonia cry for air, they want the window open, they want the tie off, they want no hindrance to respiration." He gave as his opinion that the primary cause of death was a "condition which led to circulatory collapse and edema and congestion of the lung." As his reasons for that opinion he stated, "Primarily it occurs, of course, in acute heart failure . . . [it] is the classical finding of all these many people who die from an overdose of sleeping pills. Many chemical substances, among which is alcohol . . . I could run through a list of many poisons which can do it."

Except for the amounts of the insurance, the policies are identical in form. In part, they provide as follows:

"A. INSURING CLAUSE: If at any time during the currency of this certificate the Assured shall sustain any accidental bodily injury . . . caused by . . . Accident, as hereinafter defined which shall, solely and independently of any other cause within six (6) calendar months from the date of the accident causing such bodily injury, occasion the disablement of the Assured . . . the Underwriters will pay to the Assured, his Executors, Administrators, or Assigns (or in case such bodily injury shall occasion the death of the Assured, to the Beneficiary or Beneficiaries named herein) . . . :

"E. DEFINITIONS: It is understood and agreed that:

"2. 'BODILY INJURY WHICH SHALL OCCASION DEATH' includes, in addition to the coverage herein provided, death by

exposure to the elements or physical exhaustion or drowning resulting from an accident or mechanical or other failure of anything used as a means of conveyance or transportation.

"G. CONDITIONS:

"1. EXCLUSIONS: This certificate does not cover death, injury or dismemberment:

"(b) Directly or indirectly caused or contributed to by intentional self injury disease or natural causes, suicide or attempted suicide . . .

"2. NOTICE OF LOSS: Notice in writing must be sent to the Underwriters of any accident to the Assured as soon as reasonably practicable after the occurrence of the accident . . . In the event of death, immediate notice must be sent to the Underwriters. In no case will the Underwriters be liable to make compensation to the assured or to his representatives unless the medical or other officer of the Underwriters . . . shall be allowed . . . in the event of death to make any post-mortem examination of the body of the Assured as the Underwriters are advised necessary for the purpose of ascertaining the . . . true cause of death. . . ."

The beneficiaries attack the judgment against them upon the ground that the trial judge did not properly instruct the jury. The insurer's position is that the rulings upon instructions were correct.

Complaint is made of an instruction given at the request of the insurer by which the jury was told that the plaintiffs had the burden of proving that the death of Francis was not "directly or indirectly caused or contributed to by . . . disease or natural causes."[1] The effect of this instruction, they assert, is to deprive them of the benefit of the rule established by *Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal. 2d 305 [163 P.2d 689], and particularly as that rule was applied in *Happoldt* v. *Guardian Life Ins. Co.*, 90 Cal.App.2d 386 [203 P.2d 55].

The Brooks case was an action upon a policy insuring against "the results of bodily injuries . . . caused directly

---

[1] "Plaintiffs have the burden of proving by a preponderance of the evidence that the death of George H. Francis was not directly or indirectly caused or contributed to by intentional self-injury, disease or natural causes. Furthermore plaintiffs may not recover if the evidence affirmatively shows that intentional self-injury, disease or natural causes caused or contributed to the death of the insured directly or indirectly. In determining what is meant by the language 'caused or contributed to' and 'directly or indirectly' you will consider all of the instructions and as a whole."

and independently of all other causes by violent and accidental means.'' The insurer agreed to pay double indemnity if the injuries were received ''in consequence of the burning of any building in which the insured shall be at the commencement of the fire.'' The policy further provided: ''This insurance shall not cover suicide or any attempt thereat while sane or insane; . . . nor shall it cover accident, injury, disability, death or any other loss caused wholly or partly, directly or indirectly, by disease or mental infirmity or medical or surgical treatment therefor.'' The insured, who was chronically ill, died in a fire which started in his bedroom. It was the autopsy surgeon's opinion that death was caused by second and third degree burns. After a verdict in favor of the insurer, a motion for a new trial was granted upon the ground of insufficiency of the evidence. In affirming the order granting a new trial, the court said ''that the presence of preexisting disease or infirmity will not relieve the insurer from liability if the accident is the proximate cause of death; and that recovery may be had even though a diseased or infirm condition appears to actually contribute to cause the death if the accident sets in progress the chain of events leading directly to death, or if it is the prime or moving cause.'' (Pp. 309-310.) Otherwise stated, the insurer is liable although death is caused partly by a preexisting disease or infirmity and partly by an accident, if the accident is the prime or moving cause. (*Happoldt* v. *Guardian Life Ins. Co., supra,* at p. 399.)

The provisions of the policies here sued upon are substantially the same as those considered in the Brooks case. The appellants assert that the language ''directly or indirectly caused or contributed to'' is too broad and improperly states the rule as to proximate cause. That phraseology, Underwriters reply, should not be construed in isolation. The defect, if any, says the insurer, is cured by the concluding sentence directing the jurors to consider the instructions as a whole.

■ The first two sentences of the instruction unduly stress the significance of any contribution to the death of Francis by preexisting disease or intentional self-injury. To that extent the instruction is inconsistent with the rule on causation as laid down in the Brooks case, and as stated to the jurors in several other instructions.

In the last sentence of the instruction, the jurors were told that they were to determine the meaning of ''caused or contributed to'' and ''directly or indirectly'' from ''all of

the instructions and as a whole.'' In other instructions, they were told explicitly that ''recovery may be had even though a diseased or infirm condition appears to actually contribute to the cause of death, if the happening, within the coverage of the insurance, sets in progress the chain of events leading directly to death, or if it is the prime or moving cause.''[2] By these instructions, which exactly declared the rule of the Brooks case, the jurors were informed of the technical legal meaning of the words used in the policy which state the conditions of the insurer's liability. It must be assumed that the jurors followed the court's direction and applied the law properly.

---

''[2]If, under the insurance certificates here involved, the assured sustained any accidental bodily injury caused by an accident or suffered exposure or physical exhaustion covered by the certificates as heretofore defined which bodily injury or exposure or physical exhaustion proximately caused to be set in progress disease, infection or other conditions which in natural and continuous sequence operated directly to cause death of the assured, then that death is considered in law to have resulted from said bodily injury as the bodily injury in such a situation is considered to be the proximate cause of the death. Bodily injury, you will recall, includes, under the definition of the certificates, the exposure or physical exhaustion covered by the certificates.'' (Plaintiffs' instruction No. 36.)

''The presence of pre-existing disease does not relieve the insurer from liability if an accident exposure or exhaustion as heretofore defined is the proximate, prime or moving cause of the insured's death, or if it sets in progress a chain of events leading directly to the death. . . .'' (Defendant's instruction No. 20.)

''You are instructed that, if a happening occurs which is within the coverage provisions of a policy such as those here involved and if that happening proximately caused a diseased condition or infirmity which results in death of the insured, then such happening may be the proximate cause of said death.'' (Plaintiffs' instruction No. 35.)

''If you find that a happening occurred which is within the coverage of the policy and that it, operating upon an unhealthy body, caused and put in motion a chain of events which is traced to said happening, then the happening may be the proximate cause of death. In other words, a recovery may be had even though a diseased or infirm condition appears to actually contribute to the cause of death, if the happening, within the coverage of the insurance, sets in progress the chain of events leading directly to death, or if it is the prime or moving cause.'' (Plaintiffs' instruction No. 14.)

''If you find that George H. Francis sustained any accidental bodily injury caused by an accident or if you find that he suffered exposure to the elements resulting from an accident or exposure to the elements resulting from mechanical or other failure of anything used as a means of conveyance or transportation or if you find that he suffered physical exhaustion resulting from an accident or mechanical or other failure of anything used as a means of conveyance or transportation, and if you further find that such bodily injury or such exposure to the elements or such physical exhaustion proximately caused some bodily infirmity or inflammatory process or infection or ailment from which death resulted, then you are instructed that such death did not result directly or indirectly from disease or natural cause.'' (Plaintiffs' instruction No. 15.)

In this connection it is important to note that the evidence presented by Underwriters was not offered in support of the theory that the death of Francis was occasioned in part by accident and in part by a preexisting disease or intentional self-injury. The insurer argued to the jury that death was due to "an overindulgence in alcohol, combined with a small ingestion or taking of barbiturates, added on to a preexisting heart condition." On the other hand, the beneficiaries relied upon bronchopneumonia as being the sole cause of death. In these circumstances it cannot reasonably be concluded that the jury could have misinterpreted the language of the instruction here attacked.

The second instruction complained of also was given at the insurer's request. It reads: "The burden of proof is upon plaintiffs to prove by a preponderance of the evidence that the death of Mr. Francis was occasioned by accidental bodily injury caused by accident or by exposure to the elements or physical exhaustion resulting from an accident or mechanical or other failure of anything used as a means of conveyance or transportation, and that such was the cause of his death solely and independently of any other cause." Exception is taken to "solely and independently of any other cause." The quoted language is said to be similar to and to have the same effect as that in the instruction condemned in *Happoldt* v. *Guardian Life Ins. Co., supra,* at pp. 398-399. However, the beneficiaries are in no position to criticize the instruction presented by Underwriters because the jury was given a substantially similar instruction requested by them.[3] It is well established that a party cannot complain of an error in an instruction given at the request of his adversary when one requested by him also contains the same error. (*Wells* v. *Lloyd,* 21 Cal.2d 452, 460 [132 P.2d 471]; *Yolo Water & Power Co.* v. *Hudson,* 182 Cal. 48, 51 [186 P. 772].)

Another instruction, given at the request of Underwriters, reads: "I have instructed you that the proximate cause of death is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the death, and without which the result would not have occurred. If, therefore, you find that the death of Mr. Francis

[3] "You are instructed that, while it is plaintiffs' burden of proof to show that, solely and independently of any other cause, there was occasioned to the Assured accidental death caused by accident. . . ." (Plaintiffs' instruction No. 38.)

would have occurred in any event at or about the time it did occur, as a result of intentional self-injury, disease or natural causes from which he was suffering continuously before and after the alleged accident, then and in those events your verdict must be in favor of the defendant."

The beneficiaries argue that this instruction is practically the same as one in the Happoldt case which was held to be erroneous. There, however, the instruction was one of three which were condemned as a group in that they were more favorable to the insurer than they should have been. The court concluded that the erroneous group of instructions "directed the jury to the effect that there could be no recovery if the death was caused partly by disease and partly by acci-. dental injury." (P. 399.) Here, read with the other instructions, the challenged one is a proper statement of the principle enunciated in the Brooks case. It merely conversely declares the rule which requires the beneficiaries to prove that an accident was the prime or moving cause of death. If in a given case death would have occurred in any event from some other cause at or about the time it did occur, clearly that accident was not the prime or moving cause of death.

Complaint is also made of the refusal to give one of the beneficiaries' requested instructions.[4] However, it merely restated the rule of the Brooks case in slightly different language. ■ Instructions which are cumulative or merely amplifications of other instructions, need not be given. (*Hicks* v. *Ocean Shore Railroad, Inc.,* 18 Cal.2d 773, 783 [117 P.2d 850] ; *Estate of Clark,* 180 Cal. 395, 399 [181 P. 639].)

On the question of burden of proof, the beneficiaries maintain that the insurer was required to prove that death resulted from intentional self-injury or disease, inasmuch as they are causes of death excluded by the policies.[5] The position of

---

[4] "'Death of George H. Francis did not result directly or indirectly from disease or natural cause, so as to bar recovery under either policy, if his death was the proximate result of any one or combination of the events, covered by said policies and herein summarized, which event or combination aggravated. or awakened a previously existing bodily infirmity or dormant ailment from which death resulted." (Plaintiffs' requested instruction No. 13.)

[5] Plaintiffs' requested instructions on this point are as follows: "Each policy contains what are commonly referred to as exclusionary clauses or exclusions from coverage. Only certain of these are relied upon by defendant as excluding coverage otherwise provided for by said policies. Those so relied upon will be noted in these instructions. One of the exclusions provided for in said policies is: 'Death directly or indirectly

the insurer was stated to the jury by its instructions placing the burden upon the beneficiaries to establish (1) that death resulted from an accidental bodily injury as defined by the policies, and caused by accident; and (2) that death was not caused "by intentional self-injury, disease or natural causes."[6]

The burden of proof was upon the beneficiaries, they concede, to establish that the death of Francis occurred as a result of a "bodily injury" within the meaning of that term as defined by the policy. (*Postler* v. *Travelers' Ins. Co.*, 173 Cal. 1, 3 [158 P. 1022]; *Kellner* v. *Travelers' Ins. Co.*, 180 Cal. 326, 330 [181 P. 61]; *Ogilvie* v. *Aetna Life Ins. Co.*, 189 Cal. 406, 413 [209 P. 26, 26 A.L.R. 116]; *Travelers' Ins. Co.* v. *Wilkes*, 76 F.2d 701, 705.) ▮ Ordinarily the burden is upon the insurer to prove a true excepted cause or excluded risk in order to defeat liability upon that ground. (*Mattson* v. *Maryland Casualty Co.*, 100 Cal.App. 96, 98 [279 P. 1045]; *Travelers' Ins. Co.* v. *Wilkes, supra,* p. 705.) The question for decision, therefore, is whether, under the

caused or contributed to by disease or natural causes.' As to this exclusion, you are instructed as follows:" (Plaintiffs' requested instruction No. 12.) "Death of George H. Francis did not result directly or indirectly from disease or natural cause, so as to bar recovery under either policy, if his death was the proximate result of any one or combination of the events, covered by said policies and herein summarized, which event or combination aggravated or awakened a previously existing bodily infirmity or dormant ailment from which death resulted." (Plaintiffs' requested instruction No. 13.) "Another exclusion provided for in said policies is: 'Death directly or indirectly caused or contributed to by intentional self-injury.' As to this exclusionary provision you are instructed as follows:" (Plaintiffs' conditionally requested instruction No. 16.) "In order to sustain this defense, the burden rests upon defendant Underwriters to prove by a preponderance of the evidence, each required element thereof. Under this exclusionary provision, it is not sufficient to prove merely that there was a self-injury, if any. The proof must further establish by a preponderance that the self-injury, if any, was intentional on the part of the insured and also that it either directly or indirectly caused or contributed to the death of the insured. If the evidence fails to establish each of these required elements by a preponderance, then this exclusionary provision has not been proven but must be determined against defendant and in favor of plaintiffs." (Plaintiffs' conditionally requested instruction No. 17.)

[6]In its entirety, as modified by the trial court, the second instruction states: "Plaintiffs have the burden of proving by a preponderance of the evidence that the death of George H. Francis was not directly or indirectly caused or contributed to by intentional self-injury, disease or natural causes. Furthermore plaintiffs may not recover if the evidence affirmatively shows that intentional self-injury, disease or natural causes caused or contributed to the death of the insured directly or indirectly. In determining what is meant by the language 'caused or contributed to' and 'directly or indirectly' you will consider all of the instructions and as a whole."

present policies, death occasioned by either intentional self-injury or disease, is death by reason of an excepted cause.

The policies here insured against "accidental bodily injury [including 'bodily injury which shall occasion death' as defined in the policies] caused by accident." "Accident" has been defined as "a casualty—something out of the usual course of events and which happens suddenly and unexpectedly and without any design of the person injured." (*Rock* v. *Travelers' Ins. Co.,* 172 Cal. 462, 465 [156 P. 1029, L.R.A. 1916E 1196]; *Richards* v. *Travelers Ins. Co.,* 89 Cal. 170, 175 [26 P. 762, 23 Am.St.Rep. 455].) Basically, these policies are contracts insuring against accident, and it need not be here determined whether they can be characterized as insuring against "accidental death" or only against "death effected by accidental means." (*Rock* v. *Travelers' Ins. Co., supra,* p. 465; and see *United States Mut. Acc. Assn.* v. *Barry,* 131 U.S. 100, 121 [9 S.Ct. 755, 33 L.Ed. 60]; *Lincoln Nat. Life Ins. Co.* v. *Erickson* [C.C.A. 8th], 42 F.2d 997, 1000.)

The beneficiaries contend that Clause E-2 of the policy enlarged the coverage as stated in other provisions of the contract. However, unquestionably the only purpose of that clause is to define the term "any accidental bodily injury caused by accident" to include "death by exposure to the elements or physical exhaustion . . . resulting from an accident or other failure or anything used as a means of conveyance or transportation." And the law governing the insurer's liability was correctly stated to the jury.

With regard to "intentional self-injury," the jury was properly instructed as to burden of proof. It is the antonym of "accidental," and therefore expresses a concept which manifestly is the antithesis of a death occasioned by accident. Death by suicide reasonably may be said to have been caused by "intentional self-injury" (*Barber* v. *Industrial Com.,* 241 Wis. 462, 464-465 [6 N.W.2d 199, 143 A.L.R. 1222]), and in an action upon an accident policy which excluded liability for death by suicide, the court pointed out that the contract did not provide for payment for death but for death by accident. "Suicide, at least when sane, is not accidental death. A plaintiff under this policy has the burden of proving an accidental death, thereby negativing suicide." (*Travelers' Ins. Co.* v. *Wilkes, supra,* p. 705; see also *New York Life Ins. Co.* v. *Gamer,* 303 U.S. 161, 171 [58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218]; *Griffin* v.

*Prudential Ins. Co.,* 102 Utah 563, 586 [133 P.2d 333, 114 A.L.R. 1402].) ██ By analogy, then, in a suit upon an accident policy, the beneficiary's proof of accident proximately causing death necessarily negatives "intentional self-injury."

██ Upon that construction of the insuring provisions, *Dennis* v. *Union Mutual Life Ins. Co.,* 84 Cal. 570 [24 P. 120], and *Bebbington* v. *California Western States Life Ins. Co.,* 30 Cal.2d 157 [180 P.2d 673, 1 A.L.R.2d 361], are distinguishable. The Dennis case was an action to recover upon the usual life insurance policy containing an exception to liability if death resulted from suicide. Reasoning that the exception was a true condition subsequent, the court placed upon the insurer the burden of proving suicide as the proximate cause of death. Mrs. Bebbington sued upon a life insurance policy with a clause excluding liability in the event the death of the insured occurred as a result of airplane travel other than as a fare-paying passenger in a licensed aircraft flying a regularly scheduled passenger flight. Under such circumstances, the liability of the insurer was limited to the reserve of the policy. Neither of those decisions states the proper rule applicable to an accident insurance policy.

Other cases relied upon by the beneficiaries are also distinguishable. *Postler* v. *Travelers' Ins. Co., supra,* was an action upon policies insuring "against bodily injuries effected directly and independently of all other causes through external, violent, and accidental means (suicide, whether sane or insane, is not covered)." It was held, without discussion, and citing *Dennis* v. *Union Mutual Life Ins. Co., supra,* that "[o]n the issue of suicide the burden of proof rested upon the defendant." However, the court failed to note that the Dennis case was an action upon a life insurance policy, and the rule of law there stated and followed is inapplicable to accident insurance. The burden of establishing suicide, therefore, should not have been put upon the insurer, as the provision as to death from that cause was not a condition subsequent, but merely definitive of the precise risk assumed. *Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421 [213 P. 42, 26 A.L.R. 123], also was an action upon a life insurance policy and did not distinguish correctly between different forms of insurance. Insofar as these decisions are inconsistent with the rule here stated upon the issue of burden of proof, they are overruled. For the same reason, and to the same extent, *Housh* v. *Pacific States Life Ins. Co.,* 2 Cal. App.2d 14 [37 P.2d 741], is disapproved.

 A rule as to whether or not death caused by disease constitutes a true excepted risk cannot be given in general terms or by way or broad principles of law. As a general proposition, however, "The insurer, under an accident policy, is not liable for death by mere disease, even in the absence of the usual clause expressly excluding disease from among the risks assumed." (Vance on Insurance [2d ed. 1930], § 259, p. 880.) The rule is clear but varying definitions of "disease" make it difficult to apply.

A medical definition of "disease" is: "In general, any departure from a state of health; an illness or a disease. More specifically a definite morbid process having a characteristic train of symptoms. It may affect the whole body or any of its parts, and its etiology, pathology, and prognosis may be known or unknown." (The American Illustrated Medical Dictionary [Dorland], 17th ed. 1937.) In *Dickerson* v. *Hartford Acc. & Indem. Co.*, 56 Ariz. 70 [105 P.2d 517], the court relied principally upon the statement in Webster's Dictionary. In the course of considering an accident policy containing provisions similar to the present ones, "disease" was defined as a condition in which bodily health is seriously attacked, deranged, or impaired, and as an alteration of state of the human body or some of its organs or parts, interrupting or disturbing the performance of the vital functions.

In *Matter of Connelly* v. *Hunt Furniture Co.*, 240 N.Y. 83 [147 N.E. 366], Judge Cardozo succinctly pointed out the elusive character of "disease" as it relates to workmen's compensation statutes. He said: "We attempt no scientifically exact discrimination between accident and disease or between disease and injury. None perhaps is possible, for the two concepts are not always exclusive, the one of the other, but often overlap." (P. 84.)

 Here, the sole theory of the beneficiaries is that there is liability under the language of Clause E-2 of the policies. The insurer has not urged that the beneficiaries' theory, assuming it to be factually true, was not within the scope and intent of the clause. Nor do the beneficiaries assert that the evidence offered by Underwriters which tended to show that Francis was suffering from certain organic conditions, did not constitute "disease." In these circumstances, the jury having been instructed upon burden of proof in very general terms only, without attempting to define disease, there was no error.

For these reasons, under the policies here sued upon,

death occasioned by intentional self-injury or disease is not one which occurs by reason of excepted causes. The "exclusionary clause" is the antithesis of the "insuring clause." If Francis died as the result of an accident, death was not occasioned by intentional self-injury, disease or natural causes. Conversely, if intentional self-injury, disease or natural causes caused his death, it did not result from an accident within the meaning of the policy. The instructions to the jury in regard to the burden of proof on these issues were correct.

It is not significant that Underwriters pleaded as affirmative defenses that the death of Francis occurred as a result of either intentional self-injury or disease and natural causes. A denial that death was occasioned by a bodily injury within the meaning of the policy is a sufficient plea. An additional defense that it was the result of intentional self-injury or disease does not shift the burden of proof to the defendant. (*Kellner* v. *Travelers' Ins. Co., supra,* p. 330; *New York Life Ins. Co.* v. *Gamer, supra,* p. 171; *Travelers' Ins. Co.* v. *Wilkes, supra,* p. 705; *Whitlatch* v. *Fidelity & Casualty Co.,* 149 N.Y. 45, 48 [43 N.E. 405].)

The beneficiaries challenge an instruction which reads, in part: "If, therefore, you find that the death of Mr. Francis would have occurred in any event at or about the time it did occur, as a result of intentional self-injury, disease or natural causes from which he was suffering continuously before and after the alleged accident, then and in those events your verdict must be in favor of the defendant." It is urged that this instruction, requested by Underwriters, erroneously assumed as an established fact that Francis continuously before and after the accident was suffering from some self-injury, disease or natural condition, whereas the evidence thereon was either otherwise or directly conflicting. The criticism ignores the prefatory language, "If, therefore, you find," and the concluding qualification, "then and in those events." (See *Happoldt* v. *Guardian Life Ins. Co., supra,* pp. 397-398.)

Complaint is made of the court's refusal to instruct upon the difference between "accidental death" and "death by accidental means." It is argued that the policies covered "accidental death," which is a less limited concept, and thus afforded greater coverage than "death by accidental means." In a proper case that distinction should be made. (*Ogilvie* v. *Aetna Life Ins. Co., supra,* p. 411; *Rock* v. *Travelers' Ins.*

*Co., supra,* p. 465; *Mutual Acc. Assn.* v. *Barry, supra,* p. 121; *Lincoln Nat. Life Ins. Co.* v. *Erickson, supra,* p. 1000.) Here, however, the policies do not use either term, and their provisions, including Clause E-2 were before the jury. Nothing more was required.

The beneficiaries also insist that the jury should have been instructed as to the meaning of "bodily injury." It is their position that to leave the term undefined allows the jury to surmise or speculate or determine that it could not include a death where no external injury was had. However, "bodily injury" was defined for the jurors by stating the express language of the policies, and they were told: "'Bodily injury which shall occasion death' includes, in addition to the coverage herein provided, death by exposure to the elements or physical exhaustion or drowning resulting from an accident or mechanical or other failure of anything used as a means of conveyance or transportation." No prejudice resulted from the refusal to instruct as to other meanings of the insuring phrase.

The instruction to the effect that immediate notice of death was required to be given Underwriters is also attacked by the beneficiaries. They claim that there has not been full compliance with section 551 of the Insurance Code. That statute provides: "Except in the case of life, marine, or fire insurance, notice of an accident, injury or death may be given at any time within twenty days after the event, to the insurer under a policy against loss therefrom. In such a policy, no requirement of notice within a lesser period shall be valid." It is asserted that this is not a case involving "life, marine or fire insurance," and inasmuch as it has been stipulated that notice was given within the 20-day limit, Underwriters cannot rely upon the provision of the policies.

In the alternative, the beneficiaries take the position that section 10335 of the Insurance Code governs the time of notice of claim. That section permits the inclusion of "immediate notice in case of accidental death" only in the event the statutory "standard provision relative to time of notice of claim" also is used. The beneficiaries assert that even if it is assumed that the language in the policy need not be identical with that of the statute, the policies on the life of Francis do not substantially comply with the legislative requirement. They invoke the rule that where a prescribed statutory provision is not contained in the policy, the insurer will be bound either by the statutory provision or by the

policy provision, whichever is more favorable to the beneficiary. It is contended, also, that Underwriters has waived notice of claim in that objection was not made promptly and specifically upon that ground, as required by section 554 of the Insurance Code. Furthermore, it is argued, in the event that the question of notice properly was left to the jury's determination, the instructions did not adequately state as to when notice has been given "immediately."

As for the last point, the jury was told: "A provision that immediate notice be given is satisfied by notice which is prompt and reasonable under the particular circumstances. A failure to give immediate notice is no defense where it was not reasonably possible to give such notice and the notice actually was given as soon as reasonably possible." And again, "Thus the plaintiffs have the burden of proving that notice was given to the Underwriters within a reasonable time according to the circumstances existing in this case."

It is not necessary to pass upon the other contentions pertaining to notice. Even if it be assumed that the issue of notice should not have been left to the jury's determination, there has not been a miscarriage of justice within the meaning of the constitutional provision. (Cal. Const., art. VI, § 4½.)

On this issue the beneficiaries were treated separately. The jury was instructed: "Plaintiffs Zuckerman and Edmunds as members of the partnership are presumed to have had knowledge of the terms and conditions of the certificates at all times after the certificates were issued and at the time of the death of deceased. They were required to notify defendant immediately as soon as they learned of the death. It is for you to determine when they or either of them or anyone acting in their behalf and with their knowledge learned of the death, and it is for you to determine further whether they notified defendant immediately of the death. As to the plaintiff James Francis it is for you to determine (1) when he learned of the existence of the certificate naming him as beneficiary in the event of the death of his brother and its requirement of immediate notice to defendant, (2) when he learned of the death and (3) whether, as soon as he had knowledge of the requirement of immediate notice and also had knowledge of the death of deceased he gave such immediate notice to defendant by such means and in such a manner as was reasonable and proper under all the circumstances."

 It must be assumed that the jury understood the

instructions and correctly applied them to the evidence. (*Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493, 500 [225 P.2d 497]; *Henderson* v. *Los Angeles Traction Co.*, 150 Cal. 689, 697 [89 P. 976].) ▮▮▮ James did not know that he was a named beneficiary in one of the policies until approximately the time when notice was given, March 29th. The notice dated March 29th was given on behalf of the law partnership and James. Under those circumstances, there can be little doubt that the jury found that James gave "immediate notice." The jury, however, found against him as well as against the law partnership. James, therefore, could not have been prejudiced by permitting the issue of notice to go to the jury.

Nor can it be argued that the law partnership, nevertheless, was prejudiced in that regard. On only one other issue, the question pertaining to Underwriters' right to autopsy, were the plaintiffs treated separately. Unless the jury reasonably might have found that James did not discharge his duties as to that condition, then neither he nor the partnership could possibly have been prejudiced by the submission of the issue of notice to the jury. Unless the jury decided against James on either the issue of notice or that of autopsy rights, the case necessarily must have been decided upon another ground. The remaining ground concerns the cause of death as defined by the policies. That is one which is common to the claims of all of the beneficiaries.

The beneficiaries also contend that the issue of autopsy rights should not have been submitted to the jury for determination. That position is based upon their interpretation of that part of Clause G-2 of the policies which provides: "In no case will the Underwriters be liable to make compensation to the Assured or to his representatives . . . unless . . . Underwriters . . . shall be allowed . . . in the event of death to make any post-mortem examination of the body of the Assured as [is] necessary. . . ." It is argued that "beneficiaries" are not "representatives" of the assured; also, that the language of an insurance policy is to be construed most strongly against the insurer, particularly where a forfeiture provision is involved. Another point is that Underwriters waived the right to autopsy in that it did not make a prompt request. It is quite improbable that the jury found against James Francis on the ground of noncompliance with the autopsy provision. One instruction read: "Plaintiff

James Francis as a brother of deceased could have consented to such a post mortem by defendant. Neither James Francis nor the other beneficiaries in this case, however, could by his own order have prevented the cremation of the body of deceased if such cremation had been ordered by some person legally authorized so to do. When a beneficiary knew of the terms of the certificates and learned of the death of deceased it was his duty to do such things as were reasonable and proper under all the circumstances to afford defendant the opportunity to make its own post mortem examination.''

The uncontradicted testimony of James Francis conclusively proves, for the purpose of determining whether or not asserted error was prejudicial, that he did not order cremation of the body. He did not know that he was a beneficiary under one of the policies until at least one week after the cremation. Under these circumstances, he was not prejudiced by the submission of that issue to the jury. Also, as the jury most probably did not find against James Francis on the issue of notice, the implied finding of the jury is that the death of the insured did not result from a ''bodily injury'' within the meaning of the policies. That implied finding effectively prevents the law partners of Francis from claiming prejudicial error as to them in permitting the questions of notice and autopsy rights to go to the jury.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I agree with the beneficiaries that *Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305 [163 P.2d 689], decided by a unanimous court, is controlling here. The attempt on the part of the majority of this court to distinguish it without overruling it, in my opinion, but serves to point out the correctness of that decision as applied to the facts presented here. We said there that ''[on] the other hand there is authority for what in our opinion is the correct rule, that the presence of preexisting disease or infirmity will not relieve the insurer from liability if the accident is the proximate cause of death; and that recovery may be had even though a diseased or infirm condition appears to actually contribute to cause the death if the accident sets in progress the chain

of events leading directly to death, or if it is the prime or moving cause. (*Scanlan* v. *Metropolitan Life Ins. Co.,* (C.C.A. 7th, 1937), 93 F.2d 942, 946; *Kelly* v. *Prudential Ins. Co. of America* (1939), 334 Pa. 143 [6 A.2d 55, 59]; 1 Appleman, Insurance Law & Practice (1941), pp. 497, 498; 6 Couch on Insurance (1930), § 1249, p. 4569; *cf. Hanna* v. *Interstate B. M. Acc. Assn.,* 41 Cal.App. 308, 310 [182 P. 771].)'' It was also said there that ''[a]lthough it appears that the insured was suffering from an incurable cancer and was under the influence of narcotics given to relieve pain, and that by reason of his weakened and infirm condition he may have been less able than a normal person to withstand the effect of the injuries, there is evidence from which the court could conclude that the proximate cause of his death was burns received in a fire of accidental origin.''

An analysis of the facts involved here in the light of the rule of the Brooks case shows that the policy provided, under the heading ''DEFINITIONS,'' that it was understood and agreed that ''bodily injury which shall occasion death'' included, *"in addition to the coverage herein provided,* death by exposure to the elements or physical exhaustion or drowning resulting from an accident or mechanical or other failure of anything used as a means of conveyance or transportation.'' (Emphasis added.) Here, the insured suffered from exposure to the elements by reason of the failure of his boat to return to the mainland. The following statement from the majority opinion relative to the medical testimony in this case shows that it was based on the worst kind of hearsay evidence: ''Dr. Baird testified that he put 'acute alcoholism' on the death certificate because an acquaintance of the deceased informed him that Francis was an alcoholic drinker. According to Dr. Baird, his diagnosis of edema of the brain was based solely on the statement made to him that Francis used intoxicants. Edema of the brain, said Dr. Baird, results either from alcohol or injury 'and in this case there was no evidence of injury.' His examination was made by 'gross' methods, that is, what he could see with his eyes and feel with his hands, in contradistinction to microscopic study.'' It should be noted that *under the provisions of the policy* there needed to be no evidence of injury as such. There would be no evidence of *injury* so far as physical exhaustion was concerned, or in all probability so far as exposure to the elements was concerned. The beneficiaries established the

facts concerning the ill-fated fishing trip. In all other respects the evidence was highly conflicting. Some witnesses testified that the insured was a heavy drinker; others that he never drank to excess; still others testified that he rarely drank. The evidence was also in direct conflict as to whether the insured had been ill prior to the fishing trip. The medical testimony was uncertain and conflicting and was, for the most part, based upon insufficient evidence and hearsay. An example is the medical evidence relating to the cause of death: the expert for the beneficiaries testified that the insured died of bronchial pneumonia; the expert for the insurer testified that he "didn't believe" the insured died of pneumonia, and that it was his opinion that the primary cause of death was a "condition which led to circulatory collapse and edema and congestion of the lung" which occurred "primarily" in acute heart failure. Other evidence showed that an electrocardiagram made for the insured two years before his death established that Francis had a normal heart for a man of his age.

The evidence showed that the insured, after suffering the mishap, had chills, complained of not feeling well to the extent of contacting his doctor, taking the prescribed drugs, and making plans to go to the desert to recuperate. There is nothing to show that any previous physical condition substantially or materially contributed to the death of the insured. The majority admits that the policy sued on here is substantially the same as in the Brooks case and that the insurer may be held liable although death is caused partly by a preexisting disease or infirmity and partly by accident so long as the accident is the prime or moving cause. In view of the rule of the Brooks case and the facts presented here, one of the instructions complained of was a misstatement of the law and highly prejudicial to the beneficiaries. That instruction told the jury, "Furthermore plaintiffs may not recover if the evidence affirmatively shows that intentional self-injury, disease or natural causes caused or contributed to the death of the insured directly or indirectly." In the majority opinion it is said, "The first two sentences of the instruction unduly stress the significance of any contribution to the death of Francis by pre-existing disease or intentional self-injury. To that extent the instruction is inconsistent with the rule on causation as laid down in the *Brooks* case, and as stated to the jurors in several other instructions." (Emphasis added.) As I have heretofore pointed out, the

Brooks case qualifies the provision by holding that the insurer is not relieved from liability if a preexisting disease or infirmity "appears to actually contribute to cause the death *if* the accident sets in progress the chain of events leading directly to death, or if it is the prime or moving cause." (Emphasis added.) The majority explain away the inconsistencies by the argument that other instructions followed the rule of the Brooks case. For every instruction stating the rule of the Brooks case, there is another instruction which is inconsistent with it. For example, the jury was directed to deny recovery if the death was caused partially by disease and partially by accident. Still another instruction informed the jury that plaintiffs must prove, by a preponderance of the evidence, that the insured met his death by accident or exposure and that the death occurred *"solely and independently"* (italics added) of any other cause.

The most flagrantly prejudicial, and erroneous, instruction was that which placed upon the beneficiaries the burden of proving that the insured's death was not caused by intentional self-injury, disease or natural causes. The majority concedes that "ordinarily the burden is upon the insurer to prove a true excepted cause or excluded risk in order to defeat liability upon that ground." In order to avoid the effect of this concession, it is held that these exceptions were not exceptions at all. The insurer pleaded, in its answer, as *separate and affirmative defenses,* that death was caused by disease or by natural causes; as an amendment to the answer, another *affirmative* defense was added—that death was caused by intentional self-injury. It had been held prior to the Brooks case that the *absence* of disease was a part of the plaintiff's case; and, prior to the present case, it had also been held that death by intentional self-injury, or suicide, was part of the insurer's case and that the burden of proof was upon the insurer. In order to hold that the burden of proving that the death was not caused by intentional self-injury was on the plaintiffs the majority says "[b]y analogy then, in a suit upon an accident policy, by proof of accident proximately causing death, the beneficiary necessarily negatives 'intentional self-injury'" and relies upon *Barber* v. *Industrial Com.,* 241 Wis. 462, 464-465 [6 N.W.2d 199, 143 A.L.R. 1222], *Travelers' Ins. Co.* v. *Wilkes,* 76 F.2d 701, *New York Life Ins. Co.* v. *Gamer,* 303 U.S. 161 [58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218], *Griffin* v. *Prudential Ins. Co.,* 102 Utah 563 [133 P.2d 333, 144 A.L.R. 1402].

The majority say "[I]t is not significant that Underwriters pleaded as affirmative defenses that the death of Francis occurred as a result of either intentional self-injury or disease and natural causes. A denial that death was occasioned by a bodily injury within the meaning of the policy is a sufficient plea. An additional defense that it was the result of intentional self-injury or disease does not shift the burden of proof to the defendant. [Citations.]" All of this rests upon the reasoning that intentional self-injury is the antonym of accidental and therefore expresses a concept which manifestly is the antithesis of a death occasioned by accident. "The rule supported by the overwhelming weight of authority, in cases involving accident policies *or other policies with accident* features containing express conditions or exceptions excluding or limiting the coverage of the policy as to an injury or death which would otherwise be within such coverage, is that the burden of proving that the insured's injury or death was within such conditions or exceptions is on the insurer, and that the plaintiff is not under any burden of negativing application of such exception or conditions." (Emphasis added; 142 A.L.R. 746.) Where the instructions erroneously place the burden of proof upon the wrong party, the error is prejudicial (*Anderson* v. *Mothershead,* 19 Cal. App.2d 97 [64 P.2d 995]; *Westberg* v. *Willde,* 14 Cal.2d 360 [94 P.2d 590]; *Howard* v. *Worthington,* 50 Cal.App. 556 [195 P. 709]; *Ferguson* v. *Nakahara,* 43 Cal.App.2d 435 [110 P.2d 1091]; *Ross* v. *Baldwin,* 44 Cal.App.2d 433 [112 P.2d 666]; *Scott* v. *Renz,* 67 Cal.App.2d 428 [154 P.2d 738]).

Two California cases (*Dennis* v. *Union Mut. Life Ins. Co.,* 84 Cal. 570 [24 P. 120], and *Bebbington* v. *California Western States Life Ins. Co.,* 30 Cal.2d 157 [180 P.2d 673, 1 A.L.R.2d 361]) are distinguished because they involved *life* insurance policies which contained exceptions if death resulted from suicide. *Postler* v. *Travelers' Ins. Co.,* 173 Cal. 1 [158 P. 1022], relied upon the Dennis case without noting that the Dennis case involved a *life* insurance policy; *Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421 [213 P. 42, 26 A.L.R. 123], was an action upon a life insurance policy as was *Housh* v. *Pacific States Life Ins. Co.,* 2 Cal.App.2d 14 [37 P.2d 741]. As nearly as can be ascertained from the majority opinion, so far as the burden of proof is concerned, the following cases are *overruled*: *Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421 [213 P. 42, 26 A.L.R. 123]; *Dennis* v. *Union Mut. Life Ins. Co.,* 84 Cal. 570 [24 P 120];

*Bebbington* v *California Western States Life Ins. Co.*, 30
Cal.2d 157 [180 P.2d 673, 1 A.L.R.2d 361]; *Postler* v. *Trav-
elers' Ins. Co.*, 173 Cal. 1 [158 P. 1022]. *Housh* v. *Pacific
States Life Ins. Co.*, 2 Cal.App.2d 14 [37 P.2d 741], is dis-
approved. *Apparently,* the rule is now to be that the burden
of proof is to be on plaintiff to prove that an exception to
the policy did not occur to cause the death in an accident
policy and upon the defendant where a life insurance policy
is concerned. I say, "apparently," because it is not clear
whether the burden is to be the same so far as both types
of policy are concerned.

It is interesting to note that the majority opinion will have
the effect of overruling *sub silentio* many other California
cases. It is also interesting to note that of the cases relied
upon for the proposition that the burden of proof was not
upon the defendant, only one is a California case (*Kellner* v.
*Travelers' Ins. Co.*, 180 Cal. 326 [181 P. 61]). The other
cases relied upon for that proposition are *New York Life
Ins. Co.* v. *Gamer*, 303 U.S. 161 [58 S.Ct. 500, 82 L.Ed. 726,
114 A.L.R. 1218] (a life insurance policy case arising in
Montana and involving the question of accidental, or suicidal,
death); *Travelers' Ins. Co.* v. *Wilkes*, 76 F.2d 701 (a case
arising in Florida and involving a life insurance policy and
the question of accidental, or suicidal, death); and a New
York case—*Whitlatch* v. *Fidelity & Casualty Co.*, 149 N.Y.
45, 58 [43 N.E. 405]. Other cases relied on are from Utah,
Arizona and Wisconsin.

In view of the medical testimony that there was no evidence
of "injury," I agree with the beneficiaries that the meaning
of bodily injury under the policy should have been given to
the jury. It is my opinion that the instructions given were
conflicting and confusing and weighted in favor of the in-
surer. The evidence was in direct conflict. The insured was
dead; there were no signs of outward "injury." According
to the medical testimony the insurer's medical expert testified
that the insured could not have died of pneumonia because
the clothing was not disarranged. As I have pointed out,
physical exhaustion would leave no outward signs, nor, in
all probability, would death from exposure to the elements.

I believe that in a case of this type, the instructions should
be fairly and concisely given; that when they are as confusing
and conflicting as they are in the case at bar, no good purpose
may be served by endeavoring to reconcile them in order to
reach a result. I feel, too, most strongly that California cases

should not be overruled and strained constructions placed upon other cases in order to reach a desired result. As I stated at the beginning of this dissent, it is impossible to distinguish the Brooks case from the one at bar, and any attempt to do so can lead to nothing but confusion.

For these reasons, I would reverse the judgment.

Appellants' petition for a rehearing was denied April 7, 1954. Carter, J., was of the opinion that the petition should be granted.