[Civ. No. 6936. Fourth Dist. Sept. 13, 1963.]

HELEN M. HELLER, Plaintiff and Appellant, v. BANK-ERS LIFE & CASUALTY COMPANY, Defendant and Respondent.

JOHN W. PHILLIPS et al., Plaintiffs and Appellants, v. BANKERS LIFE & CASUALTY COMPANY, Defendant and Respondent.

(Consolidated Cases.)

Roick, Roick & Hefner, F. V. Lopardo and Robert Hefner for Plaintiffs and Appellants.

Robert A. Eaton and James A. Withers for Defendant and Respondent.

BROWN (Gerald), J.—Plaintiff-appellant, Helen Heller, was the beneficiary of an insurance certificate issued under a group accident policy underwritten by defendant-respondent, Bankers Life & Casualty Company; plaintiffs-appellants, John W. Phillips, George W. Scovil and Gertrude S. Hunt were beneficiaries of a similar policy; both policies insured Homer Heller for principal sums totaling $200,000 at annual premiums aggregating $197.50. Heller and two women accompanying him died November 1, 1959, when his private plane crashed en route from Las Vegas to San Diego.

Two actions were filed on the certificates, consolidated for trial and tried by the court without a jury. The court ordered judgment for defendant in each case, determining as a conclusion of law that Heller did not die under conditions and circumstances covered by the insurance certificates. On appeal plaintiffs assert that this conclusion of law and two of the findings of fact are in error. The questioned findings were that Heller filed a flight plan and that the two women occupants of the airplane were neither experienced in flying nor licensed pilots.

The insurance certificates provided:

"The Company agrees to pay indemnity for loss suffered by the Insured Person resulting from injury; to the extent herein provided.

" 'Injury' . . . means bodily injury . . . effected solely through an accidental bodily injury to the Insured Person.

"  . . . . . . . . . . . . .

"PART VI EXCLUSIONS.

"The policy does not cover any loss caused or contributed to by . . . (7) injury sustained while engaged in or taking part in aeronautics and/or aviation of any description or resulting from being in an aircraft except while a passenger in any previously tried, tested and approved aircraft."

Plaintiffs' complaints alleged that the insured was a passenger in the ill-fated airplane. They contended during the trial that the defendant insurer bears the burden of proving that the exclusion applies, i.e., that the insured was the pilot rather than a passenger. Defendant asserted that the proof of death resulting from the airplane crash proves the policy exclusion, thus defeating recovery unless plaintiffs sustain the burden of proving that the insured was a passenger. Burden of proof is the crucial question on appeal, since there is a dearth of evidence to support a finding that the insured was a passenger.

*Bebbington* v. *California Western etc. Ins. Co.*, 30 Cal.2d 157, 159 [180 P.2d 673, 1 A.L.R.2d 361], considered burden of proof in an action on a *life* insurance policy with an attached rider which provided that the insurer's liability would be limited to the policy reserve if the insured died as a result of airplane travel other than as a fare-paying passenger in a licensed aircraft flying a regularly scheduled passenger flight. The defendant's answer asserted that plaintiff's proof of death established that the insured died while flying an airplane, thus limiting recovery to the policy reserve by operation of the exclusion clause of the rider. The court held: "The burden of proof was on defendant to establish this defense and show the circumstances which brought the death within the exclusion clause. [Citations.] Failure of proof on this issue requires affirmance of the judgment for plaintiff. Defendant was able to show that the deceased was killed in an airplane crash, but failed to show that he was not riding as a passenger in a licensed passenger aircraft at the time."

*Zuckerman* v. *Underwriters at Lloyd's*, 42 Cal.2d 460, 467 [267 P.2d 777], considered burden of proof in *accident* policies containing the following exclusions:

" 'EXCLUSIONS: This certificate does not cover death, injury or dismemberment:

" '(b) Directly or indirectly caused or contributed to by intentional self injury, disease or natural causes, suicide or attempted suicide. . . . ' "

The jury was instructed that the burden was on the beneficiaries to establish:

"(1) that death resulted from an accidental bodily injury as defined by the policies, and caused by accident; and (2) that death was not caused 'by intentional self-injury. . . .' " (P. 472.)

The court held that the jury was properly instructed as to burden of proof, since "intentional self-injury" is the antonym of "accidental," and proof by the beneficiary that death was accidental necessarily negatives "intentional self-injury." The court then outlined the facts of two cases involving actions on life insurance policies, one of which was *Bebbington* v. *California Western etc. Ins. Co., supra,* 30 Cal.2d 157. The court in *Zuckerman* concluded its treatment of these two cases as they related to burden of proof by saying at page 474, "Neither of those decisions states the proper rule applicable to an accident insurance policy."

The exclusionary provision of the life insurance contract in

*Bebbington* is virtually the same as the exclusionary provision contained in the accident insurance policy of the instant case. By repudiating the *Bebbington* rule insofar as it relates to accident insurance, we conclude that *Zuckerman* v. *Underwriters at Lloyd's, supra,* 42 Cal.2d 460, places the burden of proof on the beneficiaries to establish that the insured was a passenger.

■ Appellants failed to carry the requisite burden of proof. Moreover, there is ample evidence from which it might be concluded that the insured was piloting the crashed airplane. The airplane in which the insured was flying at the time of his death accommodated four people, and was known in the trade as a four-passenger airplane, including the pilot's seat. It could be piloted from either of the twin front seats, both of which appear to have been occupied at the time of the crash. It appears that one of the women occupied a rear seat. The operations manager of an aircraft service facility talked with the insured at approximately 5 p.m. on November 1, 1959. The insured said, "Yes, I have checked the weather, and I am filing my flight plan. . . . I am going to San Diego, and the weather [is] okay now, it was pretty bad awhile ago." A flight plan was filed. The women waited by the door while the insured talked to the operations manager and used the direct line weather and flight plan telephones. There was no evidence concerning the takeoff, or the places each person took on entering the airplane. The insured was a licensed pilot. There was no evidence that either of the women was a licensed pilot. There was testimony that the insured had allowed unlicensed people to operate the airplane, but this was limited to the simplest maneuvers once the airplane was aloft. The insured purchased the airplane new in February 1959. This evidence, and the reasonable inferences to be drawn therefrom, provided a substantial basis upon which the trial court concluded that the insured did not meet his death under conditions and circumstances covered by the contract of insurance.

■ Appellants contend that the court erred in finding that the insured filed a flight plan. They rely on the fact that the flight plan introduced into evidence was not prepared in the handwriting and signed by the insured, and on the following testimony of the operations manager:

"Q. And that procedure was the procedure followed, in your presence, by Mr. Heller?

"A. To the best of my knowledge. I couldn't swear that

he was filing a Flight Plan at any given time. Obviously he did, because they had a Flight Plan on record. I went out and was on the search, and the first thing we did was search the Flight Plan, and it had been filed. When I saw him on the telephone I couldn't positively testify whether he was on the weather phone, or whether he was on the flight-plan phone.

"Q. Could you hear him say any portion of what is contained in this Flight Plan?

"A. No."

Immediately before this testimony, the witness had described how a flight plan might be filed over the telephone on the direct line between the aircraft service company and the communication station, which would explain the absence of the insured's signature and handwriting. The propriety of the court's finding is further established by the following testimony of the same witness:

"Q. You also testified that you personally can't testify whether Mr. Heller was the one that filed the flight plan or not.

"A. He would have to have been the one, because nobody else in his group was anywhere near those telephones."

Neither this finding nor the finding that the other occupants in the airplane were not experienced in flying or licensed pilots is required to support the judgment. In fact, converse findings on these two subjects would not be fatal to the judgment, since once it was established, as the court found, that the insured "was engaged in aeronautics and/or aviation" at the time of his death, the burden was on the appellants to establish that the insured was a passenger, or fail in their claim. It is stated in *Young* v. *City of Sausalito,* 189 Cal.App.2d 768, 773 [11 Cal.Rptr. 429]:

" 'Where a finding is lacking in evidentiary support, but it is on a matter which is immaterial, or of so little materiality that a finding either way on the matter would not influence the judgment, or for some other reason the finding was unnecessary, other findings being sufficient to support the judgment, the error is harmless. [Citations.]' (3 Witkin, California Procedure, p. 2277.)"

Judgment affirmed.

Griffin, P. J., and Coughlin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 6, 1963.