[Civ. No. 687. Fourth Appellate District.—July 31, 1933.]

IDA LOSLEBEN, Respondent, v. CALIFORNIA STATE LIFE INSURANCE COMPANY (a Corporation), Appellant.

West & McKinney for Appellant.

William J. M. Heinz and McFadden & Holden for Respondent.

BARNARD, P. J.—On a former appeal in this case (119 Cal. App. 556 [6 Pac. (2d) 1012]), this court in reversing a judgment of nonsuit summarized the facts as follows:

"The plaintiff is the widow of George Phillip Losleben, who held an insurance policy issued by the defendant. This policy provided for the payment of $2,500 in the event of death resulting from natural causes and for an additional $2,500 'in the event that the death of the insured is caused by bodily injuries effected exclusively and wholly by external, violent and accidental means, said death occurring within ninety days after the happening of such accident'. The insured was employed as a mechanic in a packing-house

and on November 21, 1929, was directed by his employer to build a shelf over a workbench, which bench was about three feet high. The employer left the building about three o'clock on the afternoon of that day, leaving the insured engaged in this work. When the employer returned about two hours later he found the insured in great pain and sent him home. Doctors were immediately called, an operation was performed and on November 25, 1929, the insured died. The defendant paid the $2,500 contemplated by the policy for death from a natural cause, but refused to pay the additional $2,500.''

''The deceased had been working in this packing-house for about ten years. His employer testified that when he left him on the afternoon in question he appeared to be in perfectly good health and was whistling at his work; that in doing his work it was necessary for him to climb upon this bench, and in getting down to jump from the same; that when he returned he found the deceased suffering extreme pain and 'doubled up'; that he sent him home and shortly thereafter went over to see him; that at that time the insured could not stand up straight; and that when he was put to bed he 'drew himself up'. The physician who was immediately called testified that he examined the insured and found his abdomen very much distended and very painful to the touch; that from his examination of the patient he could determine how the injury was caused within a certain range of possibilities; and that on the same day, November 21st, he performed an operation. As to what he found, he testified as follows: 'I found a condition of peritonitis of the abdominal cavity; fluid in the abdomen, and fecal matter; I found a perforation of the small intestine in the center, or twist of the bowel, what we call a volvulus —that is the technical name for a twist of that character. The circulation had been cut off by this twist and that segment of the bowel was blue and black, colored in the process of decay.'

''This physician testified that in his opinion this condition was caused by an injury. Another physician testified that he saw the insured on November 21st, that the insured told him that the pain in his abdomen came on acutely that afternoon, compelling him to quit work, and that he almost collapsed; that when he saw the patient he was in such pain

he could not say very much; that he held his stomach and complained of the terrible pain; and that he was lying down and rolling in pain. This physician testified that in his opinion the death of the decedent was caused by acute peritonitis, which was brought on by 'the volvulus or twist of the bowel', and that this condition of the patient could be caused by 'a sudden jolt, or a strain of the bowel wall, probably a sudden jerk or jump'. Asked as to what kind of a condition volvulus is, he replied: 'It is a twist in the bowel, usually occurring in the small bowel, and as soon as that takes place you have your circulation cut off in the bowel adjoining, and that bowel immediately becomes weakened, the blood supply is shut off, and, of course, immediately we have gas accumulate because the bowel is obstructed and the gas accumulates in all the bowel, and the weakened condition in the bowel which had been deprived of the circulation is liable to burst or perforate.'

"He then testified that this patient had a volvulus and a perforation of the bowel, and that this could be caused either by chronic constipation, by tuberculosis or by a sudden jolt or strain. He then testified that he found no indications that this patient suffered from the ailments referred to, and that his bowel and all of his abdominal organs were in a healthy condition. Based upon the conditions he found, he testified that in his opinion this particular volvulus was caused by a strain."

A second trial resulted in a judgment for the plaintiff from which the defendant has taken this appeal. In addition to the facts above outlined the record shows that the two doctors who operated upon the insured, and later assisted in an autopsy, after stating what they found, testified as to the several things which could have caused such a condition, each naming trauma, or injury, as one of such causes. Each then testified that he could find no indication of the presence of any of the causes named except trauma, and that in his opinion the volvulus in the decedent was caused by trauma.

The appellant's first contention is that the evidence is entirely insufficient to support the verdict, in that it fails to show death from accidental means as distingushed from an accidental death. The appellant concedes that the evidence for the respondent is essentially the same as that

received at the first trial, with one exception. During the second trial, the respondent introduced in evidence the "proofs of death" which had been furnished upon blanks provided for that purpose by the insurance company. These contained, in answer to appropriate questions, a statement made by the respondent including the following: "The insured jumped off a work bench at packing-house where he was employed about 3 p. m. November 21" and another statement made by the attending physician as follows: "Volvulus of small intestine caused by jumping from work bench." While the appellant also relies upon certain expert evidence introduced in its behalf, this merely creates a conflict and need not be here considered. It is argued that the evidence discloses that the deceased died as the result of a jump, that the act of jumping was voluntary upon his part, and that since the entire operation of the deceased in getting down from the bench was carried out in precisely the manner he intended, this case comes within the rule of such cases as *Rock* v. *Travelers' Ins. Co.*, 172 Cal. 462 [156 Pac. 1029, 1031, L. R. A. 1916E, 1196]; *Ogilvie* v. *Aetna Life Ins. Co.*, 189 Cal. 406 [209 Pac. 26, 26 A. L. R. 116]; *Kellner* v. *Travelers' Ins. Co.*, 180 Cal. 326 [181 Pac. 61]; *Olinsky* v. *Railway Mail Assn.*, 182 Cal. 669 [189 Pac. 835, 14 A. L. R. 784].

It is well established that where an act is done in precisely the manner intended, it cannot be said that an ensuing injury results from accidental means, although the result itself may have been unexpected and be such as to constitute accidental injury. While this distinction is somewhat technical it has some reasonable basis in cases where the result is to be naturally expected or foreseen from the act done, or where, from existing disease or otherwise, the strain of an intended act is too great for a particular individual. Under our decisions, accidental means involves an element of unexpectedness in the act or occurrence which leads to the injury. In *Rock* v. *Travelers' Ins. Co., supra,* the court pointed out this distinction and observed that in most cases where injury by accidental means was held to be established, "there was some evidence which justified the inference that the means through which the injury was sustained contained something of an unexpected or unforeseen character." In *Davilla* v. *Liberty Life Ins. Co.*, 114 Cal. App.

308 [299 Pac. 831, 833], the general rules are thus gathered together from a number of cases:

"The term 'accidental means' has been frequently defined in this state, but it seems not applied to similar facts. 'The policy, it will be observed, does not insure against accidental death or injuries, but against injuries effected by accidental means. A differentiation is made, therefore, between the result to the insured and the means which is the operative cause in producing this result. It is not enough that death or injury should be unexpected or unforeseen, but there must be some element of unexpectedness in the preceding act or occurrence which leads to the injury or death.' (*Rock* v. *Travelers' Ins. Co.*, 172 Cal. 462, 465 [L. R. A. 1916E, 1196, 156 Pac. 1029].) 'Where the death is the result of some act, but was not designed and not anticipated by the deceased, though it be in consequence of some act voluntarily done by him, it is accidental death. Where death is caused by some act of the deceased not designed by him, or not intentionally done by him, it is death by accidental means. In other words, accidental death is an unintended and undesigned result, arising from acts done; death by accidental means is where the result arises from acts unintentionally done.' (*Pledger* v. *Business Men's Acc. Assn. of Texas*, (Tex. Civ. App.) 197 S. W. 889, quoted with approval in *Olinsky* v. *Railway Mail Assn.*, 182 Cal. 669, 672 [14 A. L. R. 784, 189 Pac. 835], followed in *Ogilvie* v. *Aetna Life Ins. Co.*, *supra*, [189 Cal. 406 (26 A. L. R. 116, 209 Pac. 26)].) 'An effect which is the natural and probable consequence of an act or course of action cannot be said to be produced by accidental means.' (*Harloe* v. *California State Life Ins. Co.*, 206 Cal. 141, 142 [273 Pac. 560].) 'Without doubt, there can be no recovery if the insured does a voluntary act the natural, usual, and to-be-expected result of which is to bring injury upon himself. An injury or death so occurring is not produced by "accidental means" in any sense of the word, legal or colloquial. (*Lickleider* v. *Iowa State Traveling Men's Assn.*, 184 Iowa, 423 [3 A. L. R. 1295, 166 N. W. 363, 168 N. W. 884].) . . . In *Western Com. Travelers' Assn.* v. *Smith*, 84 Fed. 401 [40 L. R. A. 653, 29 C. C. A. 223], a leading case, it is said the term "accidental means" is descriptive of "means which produce

effects which are not their usual and probable conse-quences".' (*Horton* v. *Travelers Ins. Co.*, 45 Cal. App. 462, 466 [187 Pac. 1070].) 'The term "accidental means" depends for its application upon the facts of each particular case; since what would be an unusual or improbable conse-quence, an unexpected or unforeseen occurrence in one set of circumstances in which the assured might be placed would be the usual, the expected and in all human probability the foreseen consequence affecting the assured in another set of circumstances.' (*Moore* v. *Fidelity & Casualty Co.*, 203 Cal. 465, 473 [56 A. L. R. 860, 265 Pac. 207, 210.)"

In *U. S. Mutual Accident Assn.* v. *Barry*, 131 U. S. 100 [9 Sup. Ct. 755, 33 L. Ed. 60], where the injury was preceded by a jump from a platform, the court said: "It is further urged there was no evidence to support the verdict because no accident was shown. We do not concur in this view. The two companions of the deceased jumped from the same platform, at the same time and place, and alighted safely. It must be presumed not only that the deceased intended to alight safely, but thought that he would. The jury were, on all the evidence, at liberty to say that it was an accident that he did not."

The mere fact that an act of jumping was voluntarily done does not conclusively show that an ensuing injury was not the result of accidental means. Such an act may be, and frequently is, accompanied or followed by other acts not intentionally done, such as slipping, falling, alighting upon an object not seen, an involuntary movement caused by unexpected developments or any one of a number of things that could be named. While an injury to an insured person may result in greater or less degree from an original voluntary act upon his part, if there is some evidence which justifies the inference that the means which produced the injury contained something of an unexpected or unforeseen character involving other acts not intentionally done, the resulting injury may be said to be caused through acci-dental means. In the instant case, while the deceased may have intended to jump from the bench, he may have slipped, fallen, alighted upon something, involuntarily given his body a violent jerk or twist, or a number of other things may have occurred which were not naturally or necessarily to be expected in connection with the ordinary act of jumping

from a height of three feet. The condition of the deceased immediately or shortly after his act of jumping, if he jumped, was not such as usually or ordinarily follows or is to be expected from a jump of that nature. There was evidence that the insured was in good health until suddenly stricken; that the condition in which he was found could have been caused by a sudden jolt or jerk; and that the only other things which could be expected to have caused such a condition were entirely absent. In ordinary human experience a jump of three feet, in itself, does not produce a jolt or jerk of such violence as to disrupt the internal organs of a healthy man, especially a mechanic who may be presumed to customarily engage in manual labor and more or less frequent climbing about. These facts, taken in connection with the place and circumstances, together with the natural inferences and presumptions that may be drawn from the evidence, justify the implied finding that this injury was not caused by any ordinary jump but by something quite out of the ordinary, and of an unexpected and unforeseen character. It cannot be said, as a matter of law, that the result flowed from any voluntary act done and that the only means through which the injury occurred were those which the insured intended to employ. In our opinion, a question of fact was presented which was for the jury.

The only other point raised is that the court erred in giving certain instructions. In the main, this attack is directed to two instructions reading as follows:

"You are instructed that, if you find from the evidence that the insured did a voluntary act, the natural, usual and to-be-expected result of which was not to produce injury to himself, but that there flowed from said act an unforeseen and unexpected means through which the injury was sustained, or the death produced, then you will find that the death was caused by accidental means."

"I instruct you that the doing of an intentional act, such as jumping from a bench, by decedent, from which the injury resulted, if you find that he did such intentional act and did jump from such bench, does not bar a recovery if the circumstances surrounding the doing of such act point to the possibility of an involuntary consequence, such as slipping or falling whilst jumping from a bench."

■ As to the first of these, it is urged that it does not clearly state the law and that the jury may have taken it as justifying a recovery if the *result* was unexpected whether or not the *means* which produced the injury were unforeseen and unexpected. The instruction does not justify such an interpretation and it is not to be assumed that the jury took it as meaning the opposite of what it says. It is also urged that there was no evidence justifying the giving of such an instruction. This is covered by what we have already said in regard to the evidence. Taken in connection with the other instructions, we think this instruction was not erroneous. (*Horton* v. *Travelers Ins. Co.*, 45 Cal. App. 462 [187 Pac. 1070].) ■ With respect to the second instruction referred to, the objection is to the use of the word "possibility", it being urged that this permitted the jury to decide the question at issue upon a mere possibility and not upon the preponderance of the evidence. Had the jury been told that a recovery might be had if the surrounding circumstances pointed to the possibility of an involuntary consequence, error would appear. However, the instruction is negative in form and merely told the jury that the doing of an intentional act would not, in itself, bar a recovery under certain circumstances. In the first instruction quoted and in many other instructions given the jury were plainly and repeatedly told that the burden of proof was upon the plaintiff, that they must decide only upon a preponderance of the evidence, and they were told what it was necessary for them to find in order to permit a recovery.

Among the instructions given at the request of the appellant were the following: One defining the difference between accidental death and death through accidental means, although the same was in fact much too favorable to appellant; one telling the jury that if it believed from a preponderance of the evidence that the death of the insured was the sole result of his act in jumping, their verdict must be for the defendant; one to the effect that before the jury could find for the plaintiff it must find that the injuries were caused through external, violent and accidental means independent of all other causes; one that unless the death of the insured was caused by bodily injuries effected exclusively and solely by violent and accidental means, their verdict must

be for the defendant; one that if the death of the insured was caused partly by accidental means and partly by a pre-existing diseased condition, there could be no recovery; one that the burden was upon the plaintiff to prove by a preponderance of the evidence that the death of the insured resulted from bodily injuries caused exclusively by external, violent and accidental means and that unless this was shown by a preponderance of the evidence the verdict must be for the defendant; and another to the effect that if the injury was caused solely as the result of jumping, the plaintiff could not recover. In another instruction offered by the respondent, the jury was told that under the terms of the policy it was not enough that the death or injury should be unexpected or unforeseen but that there must be something of an unexpected or unforeseen character in the means through which the injury was sustained. We think the instructions, as a whole, fully and fairly presented the issue to the jury.

The judgment appealed from is affirmed.

Marks, J., and Turrentine, J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 28, 1933.