[Civ. No. 43778. First Dist., Div. Three. Apr. 16, 1980.]

DARLENE HARGREAVES, Plaintiff and Appellant, v.
METROPOLITAN LIFE INSURANCE COMPANY, Defendant and
Respondent.

COUNSEL

W. James Snyder and Steven H. Shorr for Plaintiff and Appellant.

Richard J. Kilmartin and Knight, Boland & Riordan for Defendant and Respondent.

OPINION

WHITE, P. J.—Appellant Darlene Hargreaves appeals from a judgment ordering that she recover nothing by way of her complaint for declaratory relief. In the trial court appellant sued for a declaratory judgment that she, as the named beneficiary, was entitled to the "additional" sum of $10,000 payable as provided in a group insurance certificate and group policy of insurance issued by the Metropolitan Life Insurance Company (hereafter respondent). Respondent's group policy No. 9000-G provided, in addition to other provisions, for payment of the sum of $10,000 in the event of the death of an employee of Caterpillar Tractor Company, and for the payment of an additional $10,000 for the death or dismemberment of the employee by *accidental means*. Because appellant's late husband Michael Hargreaves was an "employee" at the time of his death, respondent paid appellant the death benefit as provided in the aforedescribed group insurance policy. This "dispute" arose when respondent refused to pay appellant "double indemnity" or the aforesaid "additional $10,000" benefit for death when caused by accidental means.

The trial court's judgment is founded upon its conclusions of law that (1) the "accidental means" policy provision is unambiguous; (2) the insured's use of heroin on the date of death was unlawful; (3) the insured's death did not result from accidental means; and (4) the group policy benefit for death from external, violent and accidental means is not payable by respondent to the named beneficiary by reason of the death of the insured.

We affirm the court's judgment.

There is no argument but that findings of fact made by the lately deceased Honorable William J. Hayes, highly regarded Superior Court Judge of Alameda County, are supported by substantial evidence. Since appellant attacks the judgment on "strictly" legal premises, we set forth the findings of fact in footnote 1[1] with the added observation that the record shows that the insured acquired his fatal drug habit in Vietnam in 1969 when he was in the military service.

---

[1] "FINDINGS OF FACT

"1. Michael G. Hargreaves ("Hargreaves") died on April 6, 1976.

"2. On the date of his death, Hargreaves was insured under Group Policy No. 9000-G issued by defendant Metropolitan to his employer Caterpillar Tractor Company for Life Insurance in the amount of $10,000.00 and for Insurance for Death or

As was contended in the trial court, appellant urges that the phrase "accidental means" (when used in insurance contracts to define coverage) is inherently ambiguous and because the elusive language serves to create a reasonable doubt as to the peril insured against, we are required to interpret and understand the language "in its most inclusive sense, for the benefit of the insured." (*Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 438 [296 P.2d 801, 57 A.L.R.2d 914].) Basic to an understanding of appellant's contention is acceptance of the premise that the word "accident," when applied to multifarious fact situations has eluded "well-defined" meaning so as to be a "technical legal term." There is more to the premise, i.e., because an insurance policy insuring against accidents is based on an "ill-defined or ambiguous concept," the California courts in every fact situation not previously litigated should determine what risks the contracting parties intended to be covered. (Thomson, *The Judicial Approach to "Accidental Means" Policies in California* (1961) 13 Hastings L.J. 255.)

---

Dismemberment by Accidental Means in the amount of $10,000.00. The plaintiff, Darlene Hargreaves, is the beneficiary of Hargreaves' insurance under said Group Policy and has been paid the Life Insurance benefit of $10,000.00 by Metropolitan.

"3. The Certificate issued to Hargreaves evidencing his insurance coverage under Group Policy No. 9000-G provided in relevant part: 'If, while insured under the Group Policy for Insurance for Death or Dismemberment by Accidental Means, the Employee sustains bodily injuries solely through violent, external and accidental means, and within ninety days thereafter suffers any of the losses specified in Section C hereof as a direct result of such bodily injuries independently of all other causes, the Insurance Company shall pay the amount of insurance specified for such loss in Section C hereof, provided, however, that in no case shall any payment be made for death or any other loss which is

"'(A) caused wholly or partly by disease or bodily or mental infirmity, or by medical or surgical treatment or diagnosis thereof, or

"'. . . . . . . . . . . . . . . . .

"'(E) caused by or resulting from intentional self-destruction or intentionally self-inflicted injury, while sane or insane.'

"4. Prior to his death Hargreaves had a history of heroin use from 1969 to 1975. He had entered a methadone program and received treatment at a drug clinic until shortly before his death.

"On April 6, 1976 he purchased heroin and was observed by his wife with drug paraphernalia preparing to inject himself with the drug. He stated to the plaintiff that he was going to get 'loaded.' Approximately twenty to twenty-five minutes later the plaintiff found Hargreaves unconscious on the floor of their home with his hypodermic kit next to him. He was taken to a hospital where he was pronounced dead.

"5. On April 7, 1976 an autopsy was performed upon Hargreaves' body and toxicological tests of blood samples made. The cause of death of Hargreaves was 'Intravenous Narcotism (Heroin).'

"6. The injection of heroin into his body by Hargreaves was voluntary and intentional and done in the usual manner without any mishap.

"7. Hargreaves was personally aware of the dangers, including the possibility of death, inherent in the injection of heroin into his body.

"8. Hargreaves' death did not result from accidental means."

The record reveals that the trial court in the course of making a decision stated: "There is no ambiguity in the language of the policy; it is used by the majority of the life insurance companies doing business in the United States." (*Pilcher* v. *New York Life Ins. Co.* (1972) 25 Cal. App.3d 717, 722, fn. 2 [102 Cal.Rptr. 82].) Appellant argues that the "conclusion reached by the trial court is erroneous and did not even properly address the issue at hand, that of the *ambiguity* question."

We disagree. It is readily apparent from the record that the trial court gave lengthy consideration to the theory of appellant's cause, together with supporting arguments and authorities. The trial court's analysis of the landmark case of *Landress* v. *Phoenix Mut. Life Ins. Co.* (1934) 291 U.S. 491 [78 L.Ed. 934, 54 S.Ct. 461, 90 A.L.R. 1382], included his correct observation that California courts, contrary to some jurisdictions, do not share the view expressed by Justice Cardozo, in his dissent in *Landress* that "[t]he attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog." (At p. 499 [78 L.Ed. at p. 938].)

█ Respondent correctly states the law in California and consequently our position: "The California Supreme Court has consistently, uniformly and repeatedly interpreted insurance policies providing benefits for death or injury effected through 'accidental means' without once having suggested that the insuring words were ambiguous. The Courts of Appeal have similarly failed to find any ambiguity or uncertainty in the coverage provided by such policies. Indeed, one Court found the distinction between accidental results and accidental means to be *clear*, viz: '*There is a clear distinction* between injury caused by "accident" and one caused by "accidental means." This is pointed out in most of the cases just cited and in *Horton* v. *Travelers Ins. Co.*, 45 Cal.App. 462, 466 [187 P. 1070]; *Losleben* v. *California State L. Ins. Co.*, 133 Cal.App. 500, 555 [24 P.2d 825]; *Davilla* v. *Liberty Life Ins. Co.*, 114 Cal.App. 308, 313 [299 P. 831]; *Zuckerman* v. *Underwriters at Lloyd's, London, supra,* 42 Cal.2d 460, 476; *Rooney* v. *Mutual Benefit Health & Acc. Assn.*, 74 Cal.App.2d 885, 888 [170 P.2d 72]. It is stated in the last cited case: "Where, as here, the policy does not insure against accidental death or accidental injuries, but against death or injuries caused by accidental means, it is not sufficient that the death or injury should be unexpected, but in the means through which the injury was sustained or the death produced there must be something of an unexpected or unforeseen character."' (Emphasis added.) (*Ritchie* v. *Anchor Casualty Co.*, 135 C.A.2d 237, 253-254.)"

This "clear distinction" was formulated in California as early as 1916 in *Rock* v. *Travelers' Insurance Co.* (1916) 172 Cal. 462, 465 [156 P. 1029][2] and a long line of authorities have followed so that the distinction prevails today. (See *Zuckerman* v. *Underwriters at Lloyd's* (1954) 42 Cal.2d 460 [267 P.2d 777]; *Harloe* v. *California State Life Ins. Co.* (1928) 206 Cal. 141 [273 P. 560]; *Ogilvie* v. *Aetna Life Insurance Co.* (1922) 189 Cal. 406 [209 P. 26, 26 A.L.R. 116]; *Olinsky* v. *Railway Mail Assn.* (1920) 182 Cal. 669 [189 P. 835, 14 A.L.R. 784]; *Postler* v. *Travelers Ins. Co.* (1916) 173 Cal. 1 [158 P. 1022]; and *Horton* v. *The Travelers Ins. Co.* (1920) 45 Cal.App. 462 [187 P. 1070].)

■ "Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction." (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) It was not the function of the trial court to attempt to overrule decisions of our Supreme Court. Consequently the trial court had no occasion to interpret the phrase "accidental means" in accordance with the principles of interpretation as regards adhesion contracts. (See *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].)

Appellant's final contention is that since sufficient evidence was presented to show that the insured did suffer his death by "accidental means," the trial court's finding that he did not is in error. In effect, appellant urges this court to decide herein that under the facts and circumstances presented, a death by heroin overdose constitutes death by "accidental means."

[2]Our Supreme Court articulated the distinction as follows: "The policy, it will be observed, does not insure against accidental death or injuries, but against injuries effected by accidental means. A differentiation is made, therefore, between the result to the insured and the means which is the operative cause in producing this result. It is not enough that death or injury should be unexpected or unforeseen, but there must be some element of unexpectedness in the preceding act or occurrence which leads to the injury or death. Policies like the one before us have been before the courts in many cases, and the great weight of authority, we think, sustains the view which we have just expressed. Thus in *Clidero* v. *Scottish Accident Ins. Co.*, 29 Scot. L. R. 303, Lord Adam said: 'The question, in the sense of this policy, is not whether death was the result of accident in the sense that it was a death which was not foreseen or anticipated. That is not the question. The question is, in the words of this policy, whether the means by which the injury was caused were accidental means. The death being accidental in the sense in which I have mentioned, and the means which led to the death as accidental, are to my mind, two quite different things. A person may do certain acts, the result of which acts may produce unforeseen consequences and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental.'" (*Rock* v. *Travelers' Insurance Co., supra*, at p. 465.)

Recognizing the teaching of *Rock v. Travelers Insurance Co., supra* (see fn. 2, *ante*, p. 706), appellant cites *Horton v. Travelers Ins. Co.* (1920) 45 Cal.App. 462 [187 P. 1070], as being "helpful" and *Cox v. Prudential Ins. Co.* (1959) 172 Cal.App.2d 629 [343 P.2d 99], as being "important" to our determination in this (according to appellant) case of first impression.

Appellant's reliance on *Horton* and *Cox*, neither of which involved death from narcotic overdoses, is misplaced. In *Horton*, the insured, a dental patient, met his death by "accidental means" because it was unexpected and unforeseen that the dentist's presumably sterile instruments were actually laden with disease-producing germs which caused death by blood poisoning. Counsel for appellant concludes that "if Horton died by accidental means, HARGREAVES did as well." Appellant's argument is that in each instance the insured decedent intended that a foreign body (medical instruments) or substance (heroin) be injected into his body and in each instance the "instrumentality" of the insertion or injection contained something of an "unforeseen or unexpected character," i.e., "virulent germs" and lethal dosage of heroin.

In *Cox, supra*, the court held that a prisoner who jumped to the pavement from a moving automobile in an unsuccessful effort to escape met his death by "accidental means." The court reasoned that the intentional jump did not cause his death but rather it was caused by a truck which he unsuccessfully tried to avoid by rolling on the pavement. The truck was held to be a subsequent intervening, unexpected and unforeseen cause or means of death. Appellant argues that Hargreaves' death "was not due to the initial voluntary act of injection," but was due to an "intervening agency," to wit: the unforeseen, "unexpected quantity or high quality of the heroin."

Appellant's analysis is not persuasive. It serves only to illustrate the soundness of the rule that the question of coverage depends solely on the particular facts in each case. (See *Moore v. Fidelity & Casualty Co.* (1928) 203 Cal. 465, 473 [265 P. 207, 56 A.L.R. 860].)

*Horton, supra*, is one of an exhaustive list of cases, while understandably not involving identical facts, that are said to be within the principle that "if one drinks from a glass containing poison under the supposition that it is a glass of pure water, and death ensues, the death is caused by 'external, violent and accidental means.'" (*Horton v. Travelers Ins. Co., supra*, 45 Cal.App. 462, 467.)

*Cox* v. *Prudential Ins. Co., supra*, 172 Cal.App.2d 629, is of no avail to appellant. It is founded on the principle stated therein in varying ways: (1) Where death is caused by some act of the deceased not designed by him, or not intentionally done by him, it is death by accidental means (*id.*, at p. 634); (2) to prevent recovery upon an accidental means policy, "'it must be made to appear that in utilizing the means to which he resorted the insured knew or should have known that he would probably sustain the injury which resulted as a consequence thereof'" (*id.*, at p. 635); and (3) "'if there is some evidence which justifies the inference that the means which produced the injury contained something of an unexpected or unforeseen character involving other acts not intentionally done, the resulting injury may be said to be caused through accidental means.'" (*Id.*, at p. 635.)

█ Applying these principles to the instant case, we find that Hargreaves' death was not caused by "accidental means." First, he obviously intentionally injected himself with heroin, a death dealing substance, and it does not appear that it could be mistaken for a harmless substance; secondly, he knew or should have known that illicit use of heroin is injurious to the body and as a practical matter when illicitly used in whatever amount a probable result not unexpected is death; and lastly, there is absolutely no evidence justifying an inference that in utilizing the means (hypodermic needle) there were other acts (or act) containing unforeseen or unexpected character unintentionally done by him so that it may be said that the resulting death was by "accidental means."

We note that appellant does not contend that the trial court's findings that heroin injection was "done in the usual manner without any mishap" and that he was "personally aware of the dangers, including the possibility of death," are not supported by substantial evidence.

Uncontradicted evidence that Hargreaves never expressed to his wife, to whom he was happily married and supporting, any inclination to commit suicide, did not require the trial court to find a reasonable inference that by some "mischance, slip or mishap," he unwittingly or unintentionally overdosed on heroin. In fact, the evidence in the record we have reviewed is all to the contrary. It is apparent that Hargreaves, with full knowledge of the dangers of injury and death from illicit heroin use declared that he was going to "get loaded." In the absence of evidence of "mischance, slip or mishap," appellant's proof of death from heroin overdose intentionally self-administered only serves to prove an

accidental death but not death by "accidental means." (See *Pilcher* v. *New York Life Ins. Co., supra*, 25 Cal.App.3d 717, 723.) Appellant did not sustain her burden of proof. The trial court did not err.

The judgment is affirmed.

Feinberg, J., and Rhodes, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 2, 1980. Bird, C. J., Tobriner, J., and Newman, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.