Chester T. SHAREK, Plaintiff,

v.

The HARTFORD ACCIDENT & INDEMNITY CO., Kirke Van Orsdel, Inc., Trustee of the Retired Officers Assoc., ABC Company, DEF, Inc., XYZ Insurance Company & UVW Insurance, Inc., Defendants.

No. C–88–1425–WWS.

United States District Court, N.D. California.

Nov. 2, 1988.

 James F. Kemp, Sonoma, Cal., for Chester T. Sharek.

Ross R. Ryder, Brian W. Walsh, Bishop, Barry, Howe, Haney & Ryder, San Francisco, Cal., for Hartford Acc. & Indem. Co.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

Plaintiff Chester Sharek brings this action against The Hartford Accident and Indemnity Company ("Hartford"), seeking to recover under an accidental death and dismemberment policy for loss of sight in one eye. The facts are not disputed and the parties agree that the only issue is construction of the language of the policy. Hartford now moves the Court for summary judgment on the ground that the policy does not cover Sharek's injury.

### I. *Undisputed Facts*

Sharek held an accidental death and dismemberment policy issued by Hartford. The policy provided that "[i]njury means bodily injury resulting directly from accident and independently of all other causes.... Loss resulting from ... medical or surgical treatment of a sickness or disease [ ] is not considered as resulting from injury." (Ryder Decl., Exh. A, Policy.)

Sharek underwent an angiography, a diagnostic procedure in which a catheter is inserted through the patient's arteries and veins into various chambers of his heart. During the angiography, a piece of plaque or a blood clot was dislodged. It relodged in his left retinal artery, blocking blood flow to his left eye so that he was blinded in that eye.

Sharek made a claim under his insurance policy. Hartford denied the claim, contending (1) that the incident was not an accident; and (2) that, even if it was an accident, it fell within the medical treatment exclusion of the policy. Sharek contends (1) that the policy covers accidental results and this was such an accidental result; and (2) that diagnostic procedures are not within the medical treatment exclusion.

### II. *Discussion*

California law governs construction of the terms of the insurance policy. *E.g., St. Paul Mercury Ins. Co. v. Ralee Engineering Co.*, 804 F.2d 520, 522 (9th Cir.1986).

### A. *The Incident Was an Injury Within the Terms of the Policy*

Sharek contends that the policy covers all injuries that result accidentally. Because plaintiff's injury was not expected or intended, he contends that it is within the terms of the policy. Hartford, on the other hand, contends that the policy covers only injuries caused by accidental means. Because the angiogram was intentionally done, Hartford contends that the unfortunate result is not within the terms of the policy.

California law recognizes a distinction between policies covering accidental results and policies covering only injuries caused by accidental means. *See Zuckerman v. Underwriters at Lloyd's*, 42 Cal.2d 460, 476, 267 P.2d 777 (1954); *Rock v. Travelers' Ins. Co.*, 172 Cal. 462, 465, 156 P. 1029 (1916); *Hargreaves v. Metropolitan Life Ins. Co.*, 104 Cal.App.3d 701, 705, 163 Cal. Rptr. 857, 859 (1980). However, California courts are not consistent in defining the distinction. *Compare, e.g., Ritchie v. Anchor Casualty Co.*, 135 Cal.App.2d 245, 253, 286 P.2d 1000 (1955) (policy covering "injury ... caused by accident" is accidental result policy) *with St. Paul Fire & Marine Ins. Co. v. Superior Court*, 161

Cal.App.3d 1199, 1202, 208 Cal.Rptr. 5, 7 (1984) (policy covering "injury ... from an accidental event" is accidental means policy). Because the incident falls within the basic coverage whether the policy is an accidental result policy or an accidental means policy, it is not necessary to decide into which category the policy falls.

A result is accidental if it occurs unexpectedly or by chance. *See Webster's New Collegiate Dictionary* 7 (1977). Although, the possibility that a piece of plaque or a blood clot may be dislodged is a known risk of an angiogram (*see* Ryder Decl., Exh. B, Informed Consent Form), it is not expected and it occurs only by chance. Therefore, plaintiff's injury is an accidental result of the angiogram.

An injury occurs by accidental means if the chain of causation includes some significant unexpected or unforeseen event that is not done intentionally. *See Hargreaves*, 104 Cal.App.3d at 708, 163 Cal.Rptr. at 861. The chain of causation leading to the lodging of the piece of plaque or clot in plaintiff's retinal artery had two distinct and significant links: the catheterization that was the main component of the angiogram procedures themselves, and the dislodging of the piece of plaque or blood clot. The first link was intentional but the second was unintentional, unexpected, and therefore accidental. Therefore, plaintiff's injury was also caused by accidental means.

### B. *Diagnostic Procedures Are Excluded Medical Treatment*

■ Whether plaintiff's injury falls within the medical treatment exclusion of the policy depends on a construction of the language "medical or surgical treatment." Hartford contends that an angiogram is medical treatment and, therefore, that any injury resulting from it is excluded. Sharek contends that, because an angiogram is a diagnostic procedure, it is not treatment within the meaning of the exclusion.

Exclusionary clauses must be clearly written so that the insured can understand the extent of coverage. *Gray v. Zurich*

*Ins. Co.*, 65 Cal.2d 263, 269, 54 Cal.Rptr. 104, 107, 419 P.2d 168, 171 (1966). If the policy language is clear and unambiguous, then the Court should not give it a strained interpretation. *E.g., St. Paul Fire & Marine Ins. Co.*, 161 Cal.App.3d 1199, 1202, 208 Cal.Rptr. 5, 7 (1984). However, any ambiguity must be resolved against the insurer to give the greatest possible protection to the insured. *E.g., State Farm Mutual Automobile Ins. Co. v. Partridge*, 10 Cal.3d 94, 101–02, 109 Cal.Rptr. 811, 816, 514 P.2d 123, 128 (1973). Existence of an ambiguity is determined according to the plain meaning that a lay person would attach to the language used. *Franceschi v. American Motorists Ins. Co.*, 852 F.2d 1217, 1220 (9th Cir.1988).

There is no ambiguity in the meaning of the term "medical treatment" for the purposes of this policy. The exclusion clearly was intended to cover all medical procedures, including diagnostic procedures, involving risk of accidental injury.

In arguing that diagnostic procedures should be distinguished from therapeutic procedures for the purpose of defining medical treatment for an accidental injury policy, plaintiff seeks to make a distinction without a difference. Diagnostic and therapeutic procedures often involve similar risks of accidental injury. The facts of this case make this clear. Plaintiff contends that an angiogram is a diagnostic procedure that does not constitute medical treatment but that angioplasty is a therapeutic procedure that does constitute medical treatment.[1] However, both procedures involve manipulating a catheter in the blood vessels in and around the heart, with the risk that a piece of plaque or a blood clot may be dislodged and pass into the patient's bloodstream.

Furthermore, many procedures, including angiograms, involve elements of both diagnosis and therapy. An angiogram serves both to uncover information necessary to determine whether a patient is a candidate for angioplasty and to insert the

---

1. Angioplasty involves threading a catheter into an occluded blood vessel and inflating a balloon on the end of the catheter to open up the blood vessel.

catheters necessary to conduct an angioplasty if the angiogram indicates that it is appropriate. It is impossible to determine whether the piece of plaque or blood clot was dislodged by the insertion of the catheter, which was necessary for the angioplasty, or by the manipulation of the catheter to take measurements for diagnostic purposes.

Plaintiff's reliance on *Franceschi v. American Motorists* is misplaced. Although that case also involved the construction of the term "medical treatment," it dealt with a medical insurance policy exclusion for pre-existing conditions. The policy excluded coverage for conditions for which the insured had received medical treatment less than one year before the policy date. The *Franceschi* court held that whether diagnostic procedures constituted medical treatment for this purpose was a close question but that the trial court's determination that diagnostic procedures were not included was reasonable. 852 F.2d at 1220. Because a therapeutic procedure indicates that the patient has a condition requiring treatment, but a diagnostic procedure does not, the distinction makes sense for a medical insurance policy exclusion. However, because both diagnostic and therapeutic procedures involve similar risks of accidental injury, the distinction does not make sense for an accident policy such as the one in this case.

### III. *Conclusion*

For the foregoing reasons, the Court holds that plaintiff's injury is within the basic coverage of the insurance policy but that it is also within the terms of the medical treatment exclusion. Therefore, defendant Hartford's motion for summary judgment is granted.

IT IS SO ORDERED.